# EXHIBIT 15

**STATE EDUCATION AGENCY FOR THE DISTRICT OF COLUMBIA**
**STATE ENFORCEMENT AND INVESTIGATION DIVISION (SEID)**
**SPECIAL EDUCATION PROGRAMS**
**(REQUEST FOR ADMINISTRATIVE DUE PROCESS HEARING)**

| | |
|---|---|
| Jeanuel Partridge, on behalf of | ) |
| James Partridge | ) |
| 4530 Quarles Street, NE | ) |
| Washington, DC 20019 | ) |
| | ) |
| Attending School:    The Rock Creek Academy | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| District of Columbia Public Schools | ) |
| 825 North Capitol, Street, NE | ) |
| Washington, DC 20002 | ) |
| | ) |
| | ) |

## A. BACKGROUND INFORMATION

1. The student's name is James Partridge (hereinafter "J.P.").

2. J.P.'s date of birth is December 8th, 1990.

3. J.P.'s address is 4530 Quarles Street, NE, Washington, DC 20019.

4. J.P. currently attends the Rock Creek Academy (hereinafter "RCA") located in the District of Columbia.

5. J.P.'s parent is Jeanuel Partridge (hereinafter "Parent" or Complainant").

6. J.P. and the parent reside in the same household.


## B. RELEVANT FACTS

7. The Complainant re-alleges paragraphs 1 thru 6.

8. J.P. at all relevant times which form the basis of this complaint, has been a resident of the District of Columbia and enrolled within the District of Columbia Public Schools ("DCPS").

9. An educational evaluation was conducted on J.P. on or about July 27th, 2004. See Educational Evaluation Report dated July 27th, 2004.

10. The educational evaluation report recommended, among other things, that J.P.'s "school [should] convene a multi-disciplinary team to consider the test results from this and other current evaluations, recommend continued placement in an appropriate special education program". Id.

11. The educational evaluation report also recommended that "a careful review of [J.P.'s] comprehensive academic history is recommended. Questions should be raised as to the findings of the most recent cognitive and/or clinical evaluations." Id.

12. A cognitive psychological evaluation was conducted on J.P. on or about September 13th, 2004. See Cognitive Psychological Evaluation dated September 13th, 2004.

13. In the cognitive psychological evaluation the psychologist recommended that J.P. receive, among other things, "an occupational therapy evaluation to assess his visual motor integration deficits", and "a current ophthalmology exam". Id.

14. An administrative due process hearing was held for J.P. on or about January 24th, 2005, alleging among other things, DCPS' failure to comply with 34 C.F.R. § 300.536(b) of the IDEA and conduct the student's triennial reevaluations.

15. The hearing concluded without a decision being issued by the independent hearing officer presiding over the matter.

16. Subsequent to the January 24th, 2005 administrative due process hearing held for J.P., and prior to the issuance of the independent hearing officer's decision, an MDT/IEP Meeting took place for J.P. on February 2nd, 2005. See Multidisciplinary Team Meeting Notes dated February 2nd, 2005.

17. The purpose of the MDT/IEP Meeting was to do, among other things, review J.P.'s educational and cognitive psychological evaluations, and revise and update J.P.'s Individualized Educational Program (hereinafter "IEP") as necessary. Id.

18. At the MDT/IEP Meeting, the MDT Team recommended, as a result of the student's increase in violent behaviors and lack of academic progress, that J.P. receive additional evaluations. Id.

19. Specifically, the MDT Team recommended that J.P. receive an occupational therapy evaluation, a psychiatric evaluation, a clinical psychological evaluation, and a vocational level III assessment. See Student Evaluation Plan dated February 3rd, 2005.

20. The independent hearing officer presiding over the January 24th, 2005, administrative due process hearing for J.P. issued her decision on February 4th, 2005. See Confidential Hearing Officer's Decision issued on February 4th, 2005.

21. DCPS, according to the order of the independent hearing officer, was required to do, among other things, "fund [J.P.'s] independent clinical psychological, psychiatric (if warranted), functional behavioral assessment and discuss [J.P.'s] need for a vocational level III [assessment]. Id.

22. An occupational therapy evaluation was completed on J.P. on or about February 18th, 2005. See Occupational Therapy Evaluation.

23. In the occupational therapy evaluation, the occupational therapist recommended that J.P. "be referred for vocational training and career planning, beginning the transition that is provided for in the I.E.P. for students 14 years of age. [J.P.] has no idea of his own at this time for career options, and should be provided with opportunities for vocational exploration and job skills development." Id.

24. A psychiatric evaluation was completed on J.P. on or about February 22nd, 2005. See psychiatric evaluation dated February 22nd, 2005.

25. In the psychiatric evaluation, the psychiatrist noted, among other things, that "[J.P.] presents with rather complicated and unusual and unique difficulties, many of which may be related to his possible diagnoses of pervasive developmental disorder. One of the best ways to confirm/rule out his diagnosis of autism/pervasive developmental disorder may be a referral to a clinic specializing in dealing with pervasive developmental disorder (e.g., 'PDD Clinic' at Children's National Medical Center, Washington, DC)." Id.

26. The psychiatrist also recommended, as an alternative, in the event J.P. was not able to receive a pervasive developmental disorder evaluation, that J.P. receive occupational therapy and physical therapy evaluations for his attentional difficulties, a speech and language evaluation, a current psycho-educational evaluation, a current clinical psychological evaluation, a neuropsychological evaluation (from a clinician who is well versed with diagnoses and presentation of pervasive developmental disorder), as well as a neurological evaluation for medical reasons. Id.

27. The parent, by and through counsel, after a review of the psychiatric evaluation, which was conducted by a DCPS contracted psychiatrist, on or about March 17th, 2005, wrote to DCPS requesting, that J.P., pursuant to 34 C.F.R. §§ 300.530-300.536 of the IDEA, receive a psycho-educational, speech and language, occupational therapy, physical therapy, neuropsychological, neurological, and a pervasive developmental disorder evaluation. See Correspondence dated March 17th, 2005.

3

28. Unfortunately, DCPS never responded to the parent's request.

29. A clinical psychological evaluation was completed on J.P. on April 5th, 2005. See Clinical Psychological Evaluation dated April 5th, 2005.

30. In the clinical psychological evaluation it was recommended that J.P. receive a neuropsychological evaluation due to his history of seizures, lead poisoning, and head injury. Id.

31. The clinical psychological evaluation also recommended that J.P. receive an opthalamology evaluation, and medical evaluations to determine any physical deterioration or improvements. Id.

32. A functional behavioral assessment was completed on J.P. on April 22nd, 2005. See Functional Behavioral Assessment dated April 22nd, 2005.

33. J.P.'s psychiatric evaluation, functional behavioral assessment, and clinical psychological evaluation were forwarded to DCPS on or about May 25th, 2005. See Correspondence dated May 25th, 2005.

34. Counsel for the parent, in that same letter further requested from DCPS that DCPS, pursuant to the February 4th, 2005, order of the independent hearing officer, have all the evaluations reviewed, and J.P.'s MDT/IEP Meeting reconvened. Id.

35. DCPS never responded to the counsel's letter of June 27th, 2005. As a result an administrative due process hearing request was scheduled to take place on June 27th, 2005, at 11:00 A.M.

36. Prior to the hearing, counsel for the parent and counsel for DCPS entered into a settlement agreement whereby DCPS reconvene J.P.'s MDT/IEP Meeting to do, among other things, review all outstanding evaluations, revise and update J.P.'s evaluations as necessary, and discuss and determine placement. See Settlement Agreement dated June 27th, 2005.

37. The MDT/IEP Meeting took place for J.P. on July 7th, 2005. See Multidisciplinary Meeting Notes dated July 7th, 2005.

38. The MDT Team determined that J.P. was eligible to receive special education and its related services as a student with an emotional disturbance, a learning disability, and other health impairment. See IEP dated July 7th, 2005.

39. The MDT Team also determined that J.P. would be referred to the Multi-Agency Planning Team because J.P. may need placement in a residential treatment facility. Id.

40. At the MDT Meeting, the parent and her educational advocate inquired from DCPS as to the status of the evaluations that were recommended by the psychiatrist and clinical psychologist Id.

41. DCPS informed the parent and her educational advocate that none of the evaluations, including the vocational level III agreed to in the February 2005 meeting, had yet to be conducted. Id.

42. DCPS agreed to follow some of the psychiatrist's recommendations, but refused to follow the others. Id.

43. Specifically, DCPS agreed to conduct J.P.'s speech and language, educational, and adaptive vineland. Id. However, DCPS could not give a timeframe in which the assessments would be completed.

44. DCPS refused to conduct the adaptive physical education, the neuropsychological, the neurological, cognitive psychological or pervasive developmental evaluation. Id.

45. DCPS had yet to conduct the vocational level III assessment, nor was a timeframe provided the parent by which the vocational level III assessment would be completed by. Id.

46. The parent, and her educational advocate objected to DCPS refusal to comply with her request for the medical doctor recommended evaluations/reevaluations. Id.

47. The parent also objected to DCPS' failure to have the evaluations/reevaluations completed and ready for review at the student's MDT/IEP Meeting.

### C. BASIS OF THE COMPLAINT

**I. Denial of a Free and Appropriate Public Education – Failure to Comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-466 § § 614 and Complete J.P's Vocational Level III Assessment.**

48. The Complainant re-alleges paragraphs 1 thru 48.

49. DCPS, as the local education agency, according to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-466 § § 614, is to ensure that the child is assessed in all areas of his or her suspected disabilities (see The Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-466 § 614 (b)(3)(A); that all request for evaluations/reevaluations are conducted in a timely manner (see Herbin v. Dist. of Columbia, Civil Action No. 02-1185 (2005); Office of Special Education Programs Policy Letter in Response

to Inquiry from Anonymous, 21 Individuals with Disabilities Education Law
Report 998, 1000 (1995); Office of Special Education Programs Policy Letter in
Response to Inquiry from Jerry Saperstone, 21 Individuals with Disabilities
Education Law Report 1127, 1129 (1995)); that all requests for
evaluations/reevaluations are complied with, (see Cartwright v. District of
Columbia, 267 F. Supp. 2d 83 (D.D.C. 2003) (the court held that given the plain
language of the regulations and the absence of a condition precedent to be met by
a parent requesting a reevaluation, [the school's] failure to comply with [that
parent's] request clearly violates the language of the regulation.  Upon receipt of .
. . the] request, [the school] should have reevaluated [the student]." Id. at 87; see
also Edwards-White v. Dist. of Columbia, 785 F. Supp. 1022, 1024 (D.D.C. 1992)
( "Because DCPS was on notice that plaintiffs wanted a reevaluation of [the
child's] placement, DCPS was obligated under [the predecessor statute to the
IDEIA] to review and possibly revise her IEP. Consequently, the determination
was erroneous since implicit in his holding was the notion that DCPS was under
no such obligation."), and Herbin v. Dist. of Columbia, Civil Action No. 02-1185
(2005)); and that any disputes regarding a student's educational programming
which necessarily includes the need for evaluations or reevaluations are timely
resolved, see Spiegler v. Dist. of Columbia, 866 F.2d 461, 466-67 (D.D. Cir.
1989) ("[D]elay in resolving matters regarding the education program of a
handicapped child is extremely detrimental to his development. The interruption
or lack of the required special education and related services can result in a
substantial setback to the child's development." Id. at 467 (quoting 121 Cong.
Rec.  37, 416 (1975) (statement of Sen. Williams)); see also Blackman v. Dist. of
Columbia, 277 F. Supp. 2d 71, 83 (D.D.C. 2003) (finding that the failure to
provide a timely due process hearing within 45 days denied the student a free and
appropriate public education. In the instant matter it is clear DCPS has failed to
comply with the requirements of the IDEIA.

50. Specifically, J.P. was recommended at the February 2, 2005 MDT/IEP Meeting,
by the MDT Team, which DCPS was a part of, that he receive a vocational level
III assessment.  See MDT Meeting Notes dated February 2nd, 2005.

51. When the MDT/IEP Meeting was reconvened for J.P. on July 7th, 2005, well over
five (5) months had passed and DCPS had yet to complete/conduct J.P.'s very
critical vocational level III assessment. DCPS failure to complete the vocational
level III assessment for J.P. is a denial of a Free and Appropriate Public
Education.

**II.  Denial of a Free and Appropriate Public Education – Failure to Comply with the
Individuals with Disabilities Education Improvement Act of 2004, Pub. L.  No. 108-
466 § § 614 and Comply with the Parent's Request to Comprehensively
Evaluate/Reevaluate J.P. to Determine His Special Education Needs.**

52. The Complainant re-alleges paragraphs 1-51.

6

53. DCPS, as the local education agency, according to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-466 § § 614, is to ensure that the child is assessed in all areas of his or her suspected disabilities (see The Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-466 § 614 (b)(3)(A); that all request for evaluations/reevaluations are conducted in a timely manner (see Herbin v. Dist. of Columbia, Civil Action No. 02-1185 (2005); Office of Special Education Programs Policy Letter in Response to Inquiry from Anonymous, 21 Individuals with Disabilities Education Law Report 998, 1000 (1995); Office of Special Education Programs Policy Letter in Response to Inquiry from Jerry Saperstone, 21 Individuals with Disabilities Education Law Report 1127, 1129 (1995)); that all requests for evaluations/reevaluations are complied with, (see Cartwright v. District of Columbia, 267 F. Supp. 2d 83 (D.D.C. 2003) (the court held that given the plain language of the regulations and the absence of a condition precedent to be met by a parent requesting a reevaluation, [the school's] failure to comply with [that parent's] request clearly violates the language of the regulation. Upon receipt of . . . the] request, [the school] should have reevaluated [the student]." Id. at 87; see also Edwards-White v. Dist. of Columbia, 785 F. Supp. 1022, 1024 (D.D.C. 1992) ( "Because DCPS was on notice that plaintiffs wanted a reevaluation of [the child's] placement, DCPS was obligated under [the predecessor statute to the IDEIA] to review and possibly revise her IEP. Consequently, the determination was erroneous since implicit in his holding was the notion that DCPS was under no such obligation."), and Herbin v. Dist. of Columbia, Civil Action No. 02-1185 (2005)); and that any disputes regarding a student's educational programming which necessarily includes the need for evaluations or reevaluations are timely resolved, see Spiegler v. Dist. of Columbia, 866 F.2d 461, 466-67 (D.D. Cir. 1989) ("[D]elay in resolving matters regarding the education program of a handicapped child is extremely detrimental to his development. The interruption or lack of the required special education and related services can result in a substantial setback to the child's development." Id. at 467 (quoting 121 Cong. Rec. 37, 416 (1975) (statement of Sen. Williams)); see also Blackman v. Dist. of Columbia, 277 F. Supp. 2d 71, 83 (D.D.C. 2003) (finding that the failure to provide a timely due process hearing within 45 days denied the student a free and appropriate public education. In the instant matter it is clear DCPS has failed to comply with the requirements of the IDEIA.

54. Specifically, the parent, by and through her educational attorney, on or about March 17th, 2005, wrote to the DCPS Office of Special Education to request, pursuant to 34 C.F.R. §§ 300.530-300.536 of the IDEA, that J.P. be evaluated/reevaluated with an occupational therapy and physical therapy evaluations for his attentional difficulties, a speech and language evaluation, a current psycho-educational evaluation, a current clinical psychological evaluation, a neuropsychological evaluation (from a clinician who is well versed with diagnoses and presentation of pervasive developmental disorder), as well as a neurological evaluation for medical reasons. See Correspondence dated March 17th, 2005.

JP 10

55. When the MDT/IEP Meeting was reconvened for J.P. on July 7th, 2005, well over four (4) months had passed and DCPS never responded to the parent's request for evaluations/reevaluations or sent the parent any notice that they were not going to comply with her request for the evaluations/reevaluatuons identified in her letter of March 17th, 2005. DCPS, was under an affirmative duty according to not only the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-466, but also the applicable case law in this jurisdiction to comply/respond to the parent's request for the evaluations/reevaluations she identified in her letter of March 17th, 2005.  DCPS failure to complete the requested evaluations/reevaluations for J.P. is a denial of a Free and Appropriate Public Education.  *Cartwright the Kingsbury*

## D.  REQUESTED RELIEF

**WHEREFORE**, the parent, by and through counsel, hereby requests the following relief:

56. A finding that DCPS denied J.P. a Free and Appropriate Public Education – Failure to Comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-466 § § 614 by failing to complete J.P.'s Vocational Level III Assessment;

57. A finding that DCPS denied J.P. a Free and Appropriate Public Education -- Failure to Comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-466 § § 614 by failing to comply with the parent's request to comprehensively evaluate/reevaluate J.P. to determine his special education needs;

58. DCPS, within five (5) calendar days, agrees to fax to counsel for the parent, Roxanne Neloms, at 202-742-2097, copies of J.P.'s level III, occupational therapy, physical therapy, speech and language, adaptive vineland, neuropsychological, and neurological evaluations.

59. DCPS, in the event the evaluations identified in paragraph number 58 have yet to be completed or are not provided to counsel for the parent within five (5) calendar days via facsimile, agrees to fund all evaluations identified in paragraph numbered 58.

60. DCPS, within ten (10) business days upon receipt of the last of the J.P.'s independent evaluations, agrees to reconvene J.P.'s MDT/IEP Meeting to revise and update J.P.'s IEP as necessary, discuss and develop a compensatory education plan; and discuss and determine if J.P. requires a change in placement;

61. That DCPS, if J.P. requires a change in placement to a residential treatment facility, DCPS shall have thirty (30) calendar days to issue a Prior Notice of

Placement, complete J.P.'s Interstate Compact Agreement; and complete J.P.'s and the parent's transportation and lodging to such facility;

62. DCPS agrees to fund four (4) hours a week until such time he demonstrates the age-appropriate proficiency in all areas affected by his disabilities or until such time he turns 22;

63. That if DCPS fails to commence the tutoring within thirty (30) calendar days of the development of J.P.'s compensatory education plan, that the parent shall have the right to get independent tutoring at DCPS' expense;

64. That DCPS agrees to pay counsel for the parent reasonable attorney's fees;

65. All meetings shall be scheduled through counsel for the parent, Roxanne Neloms, Esq., in writing, via facsimile, at 202-742-2097 or 202-742-2098;

66. That DCPS will be given a day for day extension for any delay caused by the parent, J.P., counsel for the parent, or the parent's educational advocate;

67. Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

68. In the event that the DCPS shall fail to comply with the terms herein, then under the Conciliation Agreement, the guardian shall have the authority to use self help without further notice to the DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the DCPS can come into compliance and properly assess, program and/or participate;

69. Provide counsel for the parent with copies, pursuant to 5 DCMR 3021.8, of all evaluation reports and all educational records on the student no later than sixteen (16) business hours prior to the convening of any meeting;

70. The DCPS shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation (5 DCMR 3000.3), and Other related services as are defined at 34 C.F.R. 300.24, designed to meet this student's unique needs and preparation for employment and independent living;

70. Send all notices to counsel for the parent with copies of such to the parent and in the parent's native language;

71. That DCPS within ten (10) calendar days of the filing of this complaint, pursuant

to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(B), provide the parent's representative, Roxanne Neloms, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following: i) an explanation of why DCPS proposed or refused to take the action raised in the complaint; ii) a description of other options that the IEP team considered and the reasons why those options were rejected, iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

72. That DCPS, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of DCPS, for their desire to have a Resolution Session Meeting, and the parent's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

73. That DCPS, within fifteen (15) calendar days of receiving the parent's complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), respond to the parent's request alleging any insufficiency of notice;

74. That DCPS' failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), and allege any insufficiency of the parent's administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time;

75. That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2097 or 202-742-2098, to schedule and convene a Resolution Session Meeting;

76. That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the Resolution Session Meeting for the student shall include the following persons: 1) the student's special education teacher, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a person who can interpret the data, 5) any person(s) who conducted any assessments on the student, and 6) any service providers for the student;

77. That DCPS' failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B) constitute joint waiver between DCPS and the parent to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel; and

78. A finding that the parent is the prevailing party in this action.


Roxanne Neloms, Esq., *Lead Counsel*
Domiento C.R. Hill, Esq., *Of Counsel*
James E. Brown & Associates, PLLC
1220 L Street, NW Suite 700
Washington, DC 20005
202-742-2008
Counsel for the Parent


## CERTIFCATE OF SERVICE

I, Roxanne Neloms, Esq., hereby certify that the facts alleged in this complaint, to the best of my knowledge and belief, are true and correct. I further certify that a copy of the parent's administrative due process complaint was served to the District of Columbia Public Schools' Office of Student Hearings, via facsimile, at 202-442-5556.


Roxanne Neloms, Esq., *Counsel*
Domiento C.R. Hill, Esq., *Of Counsel*
James E. Brown & Associates, PLLC
1220 L Street, NW Suite 700
Washington, DC 20005
202-742-2008
Counsel for the Parent

```
*********************
***    TX REPORT    ***
*********************
```

TRANSMISSION OK

| | | |
|---|---|---|
| TX/RX NO | 3321 | |
| CONNECTION TEL | | 92024425556 |
| CONNECTION ID | | |
| ST. TIME | 07/09 15:53 | |
| USAGE T | 01'52 | |
| PGS. SENT | 12 | |
| RESULT | OK | |

# James E. Brown & Associates, PLLC
*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | **Attorneys at Law** | Juan J. Fernandez! |
| Domiento C.R. Hill*◊ | 1220 L Street, NW | Tilman L. Gerald |
| Brenda McAllister*◊ | Suite 700 | Roxanne D. Neloms |
| Roberta Gambale | Washington, DC 20005 | John A. Straus |
| Miguel A. Hull | Telephone: (202) 742-2000 | Dolores S. McKnight |
| Christopher L. West | Facsimile: (202) 742-2098 | Marshall Lammers° |

\* Admitted in Maryland Only          e-mail: Admin@Jeblaw.biz          ! Admitted in Bolivia Only

# *FAX COVER SHEET*

TO: Sharo Newsome, Scheduling Coordinator, Office of Student Hearings, DCPS

FROM: Domiento C.R. Hill, Esq. for Roxanne Neloms, Esq.

DATE: July 9th, 2005

FAX NO: 202-442-5556

SUBJECT: J.P., DOB: 12/8/90

NUMBER OF PAGES INCLUDING COVER SHEET: 12

COMMENTS: Administrative due process hearing request. Thank-you for your assistance.

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
# STATE ENFORCEMENT & INVESTIGATONS DIVISION

David R. Smith, Due Process Hearing Officer
825 North Capital Street, 8th Floor, N.E.
Washington, DC 20002
(202) 442-5432 (phone); (202) 442-5556(fax)

| | | |
|---|---|---|
| In the Matter of | ) | **IMPARTIAL DUE PROCESS** |
| | ) | |
| James Partridge ("Student") | ) | **HEARING OFFICER'S DECISION[1]** |
| Date of Birth:  December 8, 1990 | ) | |
| Petitioner, | ) | Hearing Dates:  August 31, 2005 |
| v. | ) | Held at:  825 North Capitol Street, NW |
| | ) | 8th Floor |
| | ) | Washington, DC 20002 |
| District of Columbia Public Schools | ) | |
| 825 North Capitol Street, NW | ) | Attending School: |
| Washington, DC 20002 | ) | The Rock Creek Academy |
| ("DCPS" or "District") | ) | |
| | ) | Hearing Request: |
| | ) | July 9, 2005 |
| Respondent. | ) | |

Counsel for Parent:          Roxanne Neloms, Esq.
                             1220 L Street, NW
                             Suite 700
                             Washington, D.C. 20005

Counsel for DCPS:            Quinne Harris-Lindsey, Esq.
                             District of Columbia Public Schools.
                             9th Floor
                             825 North Capitol Street, NW
                             Washington, DC 20002

---

[1] An index of names is attached hereto for the benefit of the parties.  The index will permit the parties to identify specific witnesses and other relevant persons.  The index is designed to be detached before release of this Hearing Officer's Determination as a public record.

1

## INDEX OF NAMES

James Partridge v. DCPS

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| Special Education Advocate | Mr. Donte' Davis |
| CHILD AND CHILD'S DCPS ID # or SSN (insert ID # or Case Number on each page of the HOD vice child's name) | |
| Child's Parent(s) (specific relationship) | |
| Child/Parent's Representative | Roxanne Neloms, Esq. |
| School System's Representative | Quinne Harris-Lindsey., Esq. |
| | Katherine G. Rodi, Esq. |
| | Domiento C.R. Hill, Esq. |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

2

# INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## IMPARTIAL DUE PROCESS HEARING

**INTRODUCTION:**

A Due Process Hearing was convened on August 31, 2005. The Hearing was held at the District of Columbia Public Schools ("DCPS"), 825 North Capitol Street, N.E. Washington, D.C. 20002. The Hearing was held pursuant to a hearing request submitted by counsel for the parent dated July 9, 2005.

**ISSUE:**

1.   Whether DCPS failed to complete a Level 3 Vocational Assessment of the student?

2.   Whether DCS failed to evaluate the student to determine his special education needs?

**JURISDICTION:**

The Hearing was held and this decision was written pursuant to the *Individuals with Disabilities Education Improvement Act* (I.D.E.I.A.), 20 U.S.C. 1400, et. seq. and the *Rules of the Board of Education of the District of Columbia.*

**DUE PROCESS RIGHTS:**

Counsel for the parent waived a formal reading of the due process rights.

**FINDINGS OF FACT:**

1.   On February 2, 2005, the parties participated in an MDT/IEP meeting and developed a Student Evaluation Plan ("SEP") in which it was agreed that the following evaluations would be conducted: OT, Psychiatric and vocational assessment, level III.[2]

2.   On February 4, 2005, an HOD was issued resulting from a Due Process Hearing that went forward on the record on January 24, 2005, pursuant to the parent's hearing request.[3]  The HOD reflected an agreement reached by the parties at the January 24, 2005 Hearing, whereby DCPS was ordered to fund an independent clinical psychological evaluation, psychiatric evaluation, if warranted and a functional behavioral assessment. An MDT/IEP meeting was also ordered to be convened wherein, among other things, the parties were to discuss the evaluations and discuss a Vocational Assessment, Level III.

3.   On February 18, 2005 an OT evaluation was completed.[4] On February 22, 2005 the psychiatric evaluation was completed. Among other things, the psychiatrist recommended that the

---

[2]   DCPS-07
[3]   JP-14
[4]   DCPS-15

3

student be referred to a clinic specializing in dealing with pervasive developmental disorder at the Children's National Medical Center.[5]

4.      Additionally, the psychiatric evaluation stated that in the event the referral to a clinic was not possible for the pervasive developmental disorder evaluation, that the student should receive the following evaluations: OT, PT, speech and language, psycho-educational, clinical psychological, neuropsychological and a neurological.

5.      Following a review of the psychiatric evaluation, the parent, through counsel, wrote a letter to DCPS dated March 17, 2005 requesting that the following evaluations be conducted: a psycho-educational, speech and language, occupational therapy, physical therapy, neuropsychological, neurological and pervasive developmental disorder evaluation.[6]

6.      A clinical psychological evaluation was completed on April 5, 2005 and included among the recommendations was that the student receive a neuropsychological evaluation due to his history of seizures, lead poisoning and head injury.[7]

7.      A functional behavior assessment was completed on April 22, 2005. [8]

8.      On June 27, 2005, a due process hearing was scheduled based on a request filed by the parent.[9] Prior to the Hearing, the parties entered into a settlement agreement whereby DCPS agreed to reconvene an MDT/IEP meeting to review all outstanding evaluations, revise and update the student's IEP as necessary and discuss and determine placement.[10]

9.      The MDT/IEP meeting was held on July 7, 2005. The team determined that the student was eligible to receive special education and related services as a student with ED, LD and OHI and that he required a behavior plan, transportation and transition plan. Furthermore, an IEP was developed that specified that the student was to receive 25.25 hours of specialized instruction, 1.5 hours of psychological counseling and .75 hours of OT. The parent signed the IEP. [11]

10.      At the July 7, 2005 meeting, the parent, through her advocate, inquired about the status of a psycho-educational evaluation, neuropsychological evaluation, adaptive Vineland evaluation and a speech/language evaluation. Based on the meeting notes, DCPS did not agree to the psycho-educational evaluation because a cognitive evaluation had been completed September 13, 2005 and an educational evaluation completed July 2004. DCPS did however agree to conduct an updated educational evaluation.

11.      The MDT meeting notes also refer to the recommendation in the psychiatric evaluation for the student to go to a PDD clinic for an evaluation. The notes reflect that the parent stated that "She is working with her case manager to determine what clinic he will be sent too." It was agreed to

---

[5]      JP-17
[6]      JP-10
[7]      JP-16
[8]      DCPS-13
[9]      DCPS-19
[10]     JP-15
[11]     JP-22

complete an educational evaluation, Adaptive Vineland "as well as a referral to MAPT."[12] DCPS stated that not all the evaluations had been completed, but agreed to conduct a speech/language evaluation, psycho-educational evaluation, and an Adaptive Vineland.  The meeting notes also refer to the recommendation by the psychiatrist for a neurological evaluation and state that the mother was to make a follow up appointment for the student.

12.    As of this July 7, 2005 MDT/IEP meeting, the Level III Vocational Assessment had not been performed.

## DECISION AND CONCLUSIONS OF LAW:

1.    No witnesses testified at the Hearing.  Following opening statements, the parties concluded that the matter could be resolved through the disclosures.  Among DCPS' disclosures were the minutes of the Resolution Session meeting that had occurred.  Parent's counsel objected to this document being admitted as part of the record and that such should be treated as confidential.  DCPS is of the view that such a document is not confidential and therefore can be disclosed.  The IDEIA does not address the question as to whether or not minutes of a Resolution Session meeting can be disclosed, or if parties are precluded from doing so due to confidentiality.  Regardless of the position of the parties, even if this document was considered to be confidential, it does not follow that a hearing officer is excluded from reviewing the document and making an independent determination as to whether the contents thereof pertain to FAPE, or is offered to confirm that an offer of settlement was made.

2.    Regardless of whether or not the minutes of a Resolution Session are confidential, the real concern should be how do minutes of such a meeting, or any document for that matter, help to resolve the question of whether or not there has been a denial of FAPE.  The question is one of relevance.  Here, we have a situation involving a dispute about the student's special education needs, prompting the filing of a complaint against DCPS for denial of FAPE.  Pursuant to the IDEIA, the Resolution Session took place subsequent to any issues materializing about the student's education needs and subsequent to the filing of the complaint. Therefore, how can the Resolution Session minutes taken at a later point in time, reach back and have a bearing on the merits of a case?  Again, it would appear that the only basis for submitting the minutes of the meeting as a disclosure is to confirm that there has been an offer of settlement?  An offer of settlement does not necessarily deal with the merits of a case, but can affect the awarding of attorney's fees pursuant to 34 C.F.R. §300.513(c)(2)(i).

3.    The undersigned reads the language in the IDEIA regarding the Resolution Session 20 U.S.C. 1415 (f)(B)(i)(I) as **directing** parties to meet and talk with an open mind to "resolve" the issues in the complaint **and therefore avoid a due process hearing**. If they are not able to resolve the matter, then the case can proceed to a due process hearing dealing with **the merits of the case**.

4.    Here, based on the discussion with counsel for the parties at the Hearing, the undersigned concluded that the Resolution Session minutes here will not help the fact finder resolve the case on its merits; consequently, they are not relevant.  As such, there is no basis to consider such in this HOD; yet, it must be noted that the documents are admitted into the record, but for the limited purpose of having them identified as documents that were properly and timely disclosed.

---

[12]    The Hearing Officer understands the MAPT is a DCPS committee that has something to do with placements.

5.    With regard to the merits, the parent contends that DCPS failed to complete a Vocational Assessment, Level III, that the parties had agreed to at an MDT meeting held on February 2, 2005 and subsequently incorporated into a HOD issued February 4, 2005. The record is clear that no such assessment was conducted. However, there was also no evidence that even with the failure to conduct the assessment, that the student has been denied educational benefit. As such, the failure to conduct the evaluation is a technical violation of the IDEIA, but there is insufficient evidence to establish that such constitutes a denial of FAPE. Even so, based on the record, it appears reasonable for the evaluation to be completed as soon as possible, since the DCPS agreed to do it.

6.    With regard to the failure to fully evaluate the student, the record indicates that a number of evaluations were recommended by the DCPS psychiatrist, who recommended that the student be referred to a clinic dealing with pervasive developmental disorder, but if such was not available, then the student should have the following evaluations conducted: OT, PT, speech and language, psycho-educational, clinical psychological, neuropsychological and a neurological. The MDT meeting notes state that the mother was to determine a clinic in cooperation with her case worker. There is no evidence that this was done.

7.    The MDT/IEP team however, did not agree to performing all the evaluations recommended, which is its right to do. The fact that a given evaluation was recommended by a service provider does not mean that such a recommendation takes precedents over the deliberations of the MDT/IEP team, who must consider the recommendations made by outside professionals, but make its determination regarding the educational needs of the child. The MDT/IEP team disagreed with conducting certain evaluations and there is insufficient evidence that the decision was unfounded. Therefore, I find no denial of FAPE for not conducting all of the evaluations recommended by the psychiatrist, because there was a reasonable basis for not conducting them and there was no showing that the failure to conduct additional evaluations had an educational impact on the student.

8.    Lastly, referring back to the discussion about the Resolution Session, one possible basis to include such in a 5-Day Disclosure, is to reveal any details of any settlement discussion that may have taken place. However, again, the minutes would not necessarily resolve this question. If settlement discussion took place, which they should have, then the appropriate procedure is to memorialize the terms in a separate "settlement" offer. This document was provided to the Hearing Officer "under seal." This document would be relevant if an HOD was issued supporting the position of the parent and then DCPS could establish that it made an equivalent offer to the parent for purposes of fees. Even so, in view of the discussion above and no finding of a denial of FAPE, the settlement document shall remain under seal and placed in the student's file.

**ORDER:**

DCPS shall conduct the vocational assessment within 20 school days of the issuance of this HOD and then convene an MDT/IEP meeting within 10 calendar days thereafter to review all evaluations and make appropriate adjustments in the student's IEP as warranted

6

**APPEAL PROCESS:**

This is the final administrative decision in this matter.  Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

Date: 9-14-85

Issued: 9-15-05

David R. Smith, Esq.
Impartial Hearing Officer

7

# INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## IMPARTIAL DUE PROCESS HEARING

| | |
|---|---|
| In the Matter of ) | **CERTIFICATION OF RECORD** |
| ) | |
| James Partridge ) | |
|        Petitioner, ) | |
| ) | |
|    v. ) | |
| ) | |
| District of Columbia Public Schools ) | |
| 825 North Capitol Street, NW ) | |
| Washington, DC 20002 ) | |
| ("DCPS" or "District") ) | |
|       Respondent. ) | |
| ) | |

I, David R. Smith, Impartial Due Process Hearing Officer in this matter, DO

HEREBY CERTIFY that the attached Record of Proceeding itemizes the record in

the above-entitled matter as of this date, consisting of the items admitted into evidence,

including disclosure exhibits and the audio tape recording of the Due Process Hearing.

EXECUTED this 14th day of September, 2005.

DUE PROCESS HEARING OFFICER

8

## MATTER OF JAMES PARTRIDGE V. DCPS

### RECORD OF PROCEEDING

| DATE | DESCRIPTION |
|---|---|
| 7-9-05 | Request for Due Process |
| | Notice of Pre-Hearing Conference (as applicable) |
| 8-4-05 | Notice of Due Process Hearing |
| 8-24-05 | DCPS Disclosure Exhibits: DCPS-01 through DCPS-21 |
| 8-31-05 | Audio recordings of hearings |
| 8-24-05 | Parent Disclosure Exhibits: JP-1 through JP-23 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

9

# District of Columbia Public Schools

### OFFICE OF GENERAL COUNSEL
825 North Capitol Street NE, 9th Floor
Washington, DC 20002-1994
Phone – 202-442-5000, Fax – 202-442-5098

## APPLICATION FOR PAYMENT OF ATTORNEY FEES AND COSTS
## PURSUANT TO THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT

1. **Attorney Information**
   Law Firm: JAMES E. BROWN & ASSOCIATES, PLLC
   Attorney: JAMES E. BROWN
   Federal Tax ID No.: 52-1500760
   D.C. Bar No.: 61622

2. **Student Information**
   Name: James Partridge
   DOB: 12/8/90
   Date of Determination (HOD/SA): 9/15/05
   Parent/Guardian Name: Jeaunel Partridge
   Parent/Guardian Address: 4530 Quarles St., NE, WDC 20019
   Current School: The Rock Creek Academy
   Home School: The Rock Creek Academy

3. **Invoice Information**
   Invoice Number: 05-440
   Date Request Submitted: 9/23/05
   Date(s) Services Rendered: 6/29/05 to 8/31/05
   Amount of Payment Request: $ 9,093.31

4. **Certification (must be signed by principal attorney)**

I certify that all of the following statements are true and correct:

- all services listed on the enclosed invoices were actually performed;
- the entire amount requested on the enclosed invoice for payment of costs and expenses represents the actual amount of costs and expenses incurred;
- the District of Columbia Public Schools is the sole entity from which payment of the fees, costs and expenses itemized on the enclosed invoice is requested;
- no attorney or law firm who either (1) provided services listed on the enclosed invoice, or (2) will benefit from any monies paid as a result of the submission of the enclosed invoice, has a pecuniary interest, either through an attorney, officer or employee of the firm, in any special education diagnostic services, schools, or other special education service provider;
- I understand that the making of a false statement to an agency of the DC Government is punishable by criminal penalties pursuant to D.C. Code §22-2405.

_____          September 23, 2005
Signature                                               Date

# LEGEND

### ATTORNEYS

| | |
|---|---|
| JEB | James E. Brown, Esq. |
| DH | Domiento Hill, Esq. |
| CW | Christopher West, Esq. |
| BM | Brenda McAllister, Esq. |
| RG | Roberta Gambale, Esq. |
| MH | Miguel Hull, Esq. |
| RR | Rachel Rubenstein, Esq. |
| JF | Juan Fernandez, Esq. |
| CB | Christina Busso, Esq. |
| JS | John Straus, Esq. |
| RN | Roxanne Neloms, Esq. |
| TG | Tilman Gerald, Esq. |
| DSM | Delores Scott McKnight, Esq. |
| ML | Marshall Lammers, Esq. |

### PARALEGALS and LAW CLERKS

| | |
|---|---|
| AAG | Aracelly A. Gonzalez |
| DP | David Proctor |
| BDL | Blanca De La Sancha |
| SB | Sara Benkharafa |
| WB | Williams Bautista |
| YA | Yamileth Amaya |
| CMM | Claudia M. Martinez |
| HR | Heidi Romero |
| KD | Kelly Dau |
| MT | Michele Torry, BA, L. Cert. |
| TB | Tamika Beasley |

### ADVOCATES

| | |
|---|---|
| MM | Michelle Moody, MA |
| CS | Cheron Sutton-Brock, MA |
| KC | Kevin Carter, MA |
| SM | Sharon Millis, M. Ed. |
| CM | Carolyn Monford, MA |
| GMH | Garfield Mark Holman, MA |
| RB | C. Robin Boucher, Ph.D. |
| TS | Tamieka A. Skinner, MA |
| CP | Carrie Pecover, MA |
| CG | Comesha Griffin, MS |
| WD | William Daywalt, M. Ed. |
| DD | Donte Davis |
| CF | Carlos Fernandez, MA,JD |

### OUT OF POCKET COSTS

| | |
|---|---|
| FAX | Facsimile @ $1.00 per page |
| COP | Reproduction @ $0.25 per page |
| TRN | Transportation @ actual taxi cost |
| TEL | Long Distance Telephone @ actual cost |
| PAR | Parking @ actual cost |
| MES | Messenger/Express Mail @ actual cost |
| POS | Postage @ actual cost |

James E. Brown & Associates, PLLC
A Professional Limited Liability
Company
1220 L Street, NW Suite 700
Washington, DC 20005

Invoice submitted to:
Partridge, Jame

September 22, 2005
In Reference To:    Partridge, Jame

Invoice #10976

Professional Services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 6/29/2005 KD | Drafted letter to parent/enclosed copy of 6-27-05 SA/copy to advc and file/added to case notes/posted deadline issues to Outlook Calendar | 0.50 105.00/hr | 52.50 |
| 7/7/2005 DD | Reviewed file and evaluations for upcoming IEP/MDT meeting | 1.00 175.00/hr | 175.00 |
| DD | Attended MDT/IEP @school | 2.50 175.00/hr | 437.50 |
| 7/9/2005 DH | Review the Individualized Educational Program prepared at the student's most recent MDT/IEP Meeting, review MDT Meeting Notes, conduct educational research, discussion with the student's educational advocate and parent regarding the MDT/IEP Meeting, conduct educational research regarding the DCPS' duty to comply with the parent's request for reevaluation, DCPS duty to conduct a full and individual reevaluation/evaluation of a student, draft administrative due process hearing complaint for Ms. Neloms' review. | 7.58 350.00/hr | 2,653.00 |
| RN | Review administrative due process hearing complaint. | 0.25 350.00/hr | 87.50 |
| 7/13/2005 KD | Phone call to parent re: case status. | 0.08 105.00/hr | 8.40 |
| 7/18/2005 KD | Drafted letter to parent/enclosed copy of HR-Complaint/copy to advc and file/added to case notes | 0.42 105.00/hr | 44.10 |
| 7/21/2005 DH | Draft letter, for Ms. Neloms' review, regarding DCPS' request to reconvene the student's Resolution Session Meeting. | 0.25 350.00/hr | 87.50 |

Partridge, Jame

Page    2

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/21/2005 | RN | Review letter drafted by Mr. Hill, regarding DCPS' request to reconvene the student's Resolution Session Meeting. | 0.08<br>350.00/hr | 28.00 |
| 7/31/2005 | DH | Draft and file letter with Student Hearing Office for the State Education Office, requesting administrative due process hearing. | 0.33<br>350.00/hr | 115.50 |
| | RN | Review letter drafted by Mr. Hill, requesting that the student's administrative due process hearing be scheduled. | 0.08<br>350.00/hr | 28.00 |
| 8/8/2005 | KD | Drafted letter to parent/enclosed copy of Atty's 7-21-05 Ltr to DCPS re 2nd Rqst for Res Mtng - Denied /copy to advc and file/added to case notes | 0.33<br>105.00/hr | 34.65 |
| | KD | Drafted letter to parent/enclosed copy of HN for 8-31-05/copy to advc and file/added to case notes/posted same to Outlook Calendar | 0.50<br>105.00/hr | 52.50 |
| | KD | Drafted letter to parent/enclosed copy of Atty's 7-20-05 Ltr to DCPS re Results of Res Mtng/copy to advc and file/added to case notes | 0.33<br>105.00/hr | 34.65 |
| 8/22/2005 | KD | Drafted letter to parent/enclosed copy of Notice of Intent to Evaluate from RCA/copy to advc and file/added to case notes | 0.42<br>105.00/hr | 44.10 |
| 8/24/2005 | KD | Prepare disclosure to DCPS | 1.67<br>105.00/hr | 175.35 |
| | RN | Review the student's five-day disclosures prepared by co-counsel on the case. | 0.33<br>350.00/hr | 115.50 |
| | DH | Prepare the student's file, prepare five-day disclosures. | 1.00<br>350.00/hr | 350.00 |
| 8/26/2005 | DH | Draft Motion to Stike DCPS' introduction of the Resolution Session Meeting Notes into their five-day. | 2.00<br>350.00/hr | 700.00 |
| 8/29/2005 | KD | Drafted letter to parent/enclosed copy of Memorandum of Points and Authorities/copy to advc and file/added to case notes | 0.42<br>105.00/hr | 44.10 |
| 8/30/2005 | DH | Prepare for the student's administrative due process hearing. | 1.50<br>350.00/hr | 525.00 |
| | RN | Prepare for the student's administrative due process hearing. | 1.50<br>350.00/hr | 525.00 |
| 8/31/2005 | DH | Prepare for the student's administrative due process hearing. | 1.50<br>350.00/hr | 525.00 |
| | RN | Prepare for the student's administrative due process hearing. | 1.50<br>350.00/hr | 525.00 |
| | RN | Appear at the student's administrative due process hearing. | 1.50<br>350.00/hr | 525.00 |

Partridge, Jame

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 8/31/2005 | DH | Appear at the student's administrative due process hearing. | 1.50 350.00/hr | 525.00 |
| | DD | Reviewed file, evaluations, HR, and SA for upcoming hearing | 1.00 175.00/hr | 175.00 |
| | DD | Appearance to 825 North Capital for due process hearing | 1.50 175.00/hr | 262.50 |

| | | Hrs/Rate | Amount |
|---|---|---|---|
| | For professional services rendered | 31.57 | $8,855.35 |

Additional Charges :

| | | Amount |
|---|---|---|
| 6/29/2005 | Postage; SA letter to parent. | 0.37 |
| | Copied: SA letter for parent and advocate. | 3.00 |
| 7/18/2005 | Postage; HR complaint letter to parent | 0.83 |
| | Copied: HR/Complaint letter for parent and advocate. | 6.50 |
| 7/21/2005 | Facsimile-ltr | 2.00 |
| 7/28/2005 | Postage; letter to parent. | 0.83 |
| 8/8/2005 | Postage; letter to parent  re: attorney's letter to DCPS, 2nd meetin denied, and HN. | 0.60 |
| | Copied: results of RM, denial of 2nd meeting, and HN for parent and advocate. | 4.00 |
| 8/22/2005 | Copied: Notice of intent to evaluate for parent and advocate. | 1.50 |
| | Postage; notice of intent to evaluate letter to parent. | 0.37 |
| 8/24/2005 | Copied: Disclosure for OGC and SHO. | 80.50 |
| 8/26/2005 | Facsimile motion to strike to SHO | 8.00 |
| | Facsimile motion to strike to OGC | 8.00 |
| 8/29/2005 | Postage; letter to parent re: memo of Points and Authorities. | 0.83 |
| | Copied: Intake forms for c-file and memo for parent and advocate. | 9.75 |
| 8/31/2005 | Sedan taxi service to and from  DCPS for hearing | 14.00 |
| | File review preparation of bill and invoice audit | 96.88 |
| | Total costs | $237.96 |
| | Total amount of this bill | $9,093.31 |





District of Columbia Public Schools
OFFICE OF THE GENERAL COUNSEL
825 North Capitol Street NE, 9th Floor
Washington, DC 20002-1944
Phone- 202-442-5000, Fax- 202-442-5098

| | | | | |
|---|---|---|---|---|
| **Attorney Firm** | James E. Brown & Associates, PLLC | **Dates of Service** | 6/29/2005 to | 8/31/2005 |
| **Student** | James Partridge | **OGC Control** | 3709 | |
| **Date Received** | 9/23/2005 | **HOD Docket Num** | | |
| **HOD DATE** | 9/15/2005 | **Attorney Invoice** | 05-440 | |
| **Funding Fiscal Year:** | 10/1/2005 | | | |

**1) Application Review**

a) Application complete       Y
b) Certification Signed       Y
c) HOD/SA Attached          Y

**2) Allocation of invoice**

| | **Invoiced** | **Approved** |
|---|---|---|
| a) Attorney's Fees | $8,855.35 | $0.00 |
| b) Expert/advocate Fees | $0.00 | $0.00 |
| c) Attorney's Expenses | $237.96 | $0.00 |
| **TOTALS** | $9,093.31 | $0.00 |

| | |
|---|---|
| Amount Approved Before Partial Payment | $0.00 |
| Partial Payment | $0.00 |
| Total Amount Approved | $0.00 |

Processed By: Attorney Fee Invoice Processing Team

Approved By:

# Attorney Dispute Sheet

**Attorney Firm:** James E. Brown & A

**HOD Date:** 9/15/2005

**Student:** James    Partridge

**Attorney Fee Cap Amount:** $4,000.00

| OGC | Date of Dispute | Dispute Type: | Disputed Item | Dispute Basis | Attorney Rate of Disputed Item | Time | Sub Amt | Approved Rate | Time | Approved Amount | Disputed Time | Disputed Amount |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 3709 | | Cost | | No final HOD | $237.96 | 1 | $237.96 | $0.00 | 0 | $0.00 | 1 | $237.96 |
| 3709 | | Expert/ Advocat | | No final HOD | $0.00 | 1 | $0.00 | $0.00 | 0 | $0.00 | 1 | $0.00 |
| 3709 | | Fee | | No final HOD | $8,855. | 1 | $8,855.35 | $0.00 | 0 | $0.00 | 1 | $8,855.35 |

**Totals** | | | | | | | $9,093.31 | | | $0.00 | | $9,093.31

**Attorney Charges**

| | |
|---|---|
| Invoiced Attorney Fee Amount | $8,855.35 |
| Disputed Attorney Fee Amount | $8,855.35 |
| Pre-Cap Approved Attorney Fee Amount | $0.00 |
| Fee Cap Adjustment (amt cap exceeded) | $0.00 |
| Approved Attorney Fees | $0.00 |

**Expert/Advocate Charges**

| | |
|---|---|
| Total Invoiced Expert Charges: | $0.00 |
| Disputed Expert Fee | $0.00 |
| Approved Expert Fee | $0.00 |

**Attorney Expenses**

| | |
|---|---|
| Invoiced Attorney Expenses | $237.96 |
| Disputed Attorney Expenses | $237.96 |
| Approved Expenses | $0.00 |

| | |
|---|---|
| Approved Invoice Prior to Prepayments | $0.00 |
| Partial Payment: | $0.00 |
| Total Invoice Approved | $0.00 |