# Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HASHIMA AGAPITO, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-1935 (RMC)** |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Can lawyers not licensed to practice in the District of Columbia collect attorneys' fees under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), for successfully representing special-needs children in administrative proceedings before impartial hearing officers of the D.C. Public Schools ("DCPS")? Answering that question in the negative, the Court will grant summary judgment to Defendants on the bulk of Plaintiffs' fee claims.

### I. BACKGROUND

Under the IDEA, "states and territories, including the District of Columbia, that receive federal educational assistance must establish policies and procedures to ensure . . . that free appropriate public education . . . is available to disabled children." *Reid v. Dist. of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005) (citing 20 U.S.C. § 1412(a)(1)(A)) (internal quotation marks omitted). The statute permits a parent who thinks the District is falling short of its obligations to have his or her complaints considered in "an impartial due process hearing," 20 U.S.C. § 1415(f), and, if still aggrieved, in federal district court, *id.* § 1415(i)(2)(A). It further gives the district courts

discretion to award "reasonable attorneys' fees" to a parent who is a "prevailing party" in such

proceedings. *Id.* § 1415(i)(3)(B); *Jester v. Gov't of the Dist. of Columbia*, 474 F.3d 820, 821 (D.C.

Cir. 2007). Plaintiffs here are the parents or guardians of 54 children who argue that they prevailed

in their administrative due process hearings before DCPS and, thus, are entitled to attorneys' fees.

The hearings at issue took place between March and July 2005. Defs.' Facts ¶ 1.

One of five lawyers associated with the firm James E. Brown & Associates PLLC represented each

Plaintiff — namely, attorneys Miguel Hull, Domiento Hill, Marshall Lammers, Brenda McAllister,

or Christopher West. As will be explained later, for present purposes the Court presumes that each

Plaintiff was a prevailing party. In a letter dated August 4, 2005, DCPS Deputy General Counsel

Erika Pierson returned 88 invoices to the Brown firm, explaining that they had been "denied for

payment due to the unauthorized practice of law committed by the attorneys involved." Pls.' Ex. 16.[1]

Curiously, it is undisputed that Mr. Hull has been licensed to practice in the District since 2000.

Pls.' Ex. 1. However, Mr. Hill was not admitted here until February 2, 2006; Mr. Lammers until

November 14, 2005; and Ms. McAllister is apparently *still* not admitted. Defs.' Facts ¶¶ 18-20. Mr.

West was licensed in the District on May 6, 2005 — within the above time frame, but after the

hearings in which he participated. Defs.' Facts ¶ 21; Pls.' Facts ¶¶ 33, 34, 37, 38, 39, 43, 45, 62,

65, 69, 78, 79, 81, 86.

The record suggests that DCPS's rejection of these invoices marked the end of a

period of uncertainty at the Brown firm about whether attorneys not licensed in the District could

---

[1] Of these 88, only 54 are at issue here; the record offers no explanation why the firm is not contesting DCPS's rejection of the others. It is also worth noting, given that Plaintiffs accuse Defendants of malfeasance, *see, e.g.*, Pls.' Mem. at 13, that the same letter offered the firm $1,374,848.34 in attorneys' fees arising out of 352 other administrative hearings.

represent the parents of disabled students in administrative hearings before DCPS. Indeed, the extent

to which DCPS has insisted that attorneys appearing before its impartial hearing officers be

D.C.–barred is a matter of some dispute. Plaintiffs suggest that their attorneys' appearances have

long been permitted by custom, Pls.' Mem.[2] at 17, though there is no rule or regulation endorsing

such a practice. Whatever the prior custom, on January 27, 2005, DCPS General Counsel Veleter

Mazyck circulated to DCPS attorneys and hearing officers a memorandum arguing that D.C. Court

of Appeals Rule 49, which governs the unauthorized practice of law, requires that attorneys not

licensed in the District be disqualified as counsel in administrative hearings before DCPS. Pls.' Ex.

7. Nevertheless, of the 54 hearings at issue in the complaint, DCPS attorneys specifically raised this

objection in only eight. Pls.' Facts ¶¶ 14, 34, 45, 73, 74, 77, 78, 82.

Rule 49 is enforced by the D.C. Court of Appeals Committee on Unauthorized

Practice of Law (the "Committee"), which is charged with investigating complaints and, where

warranted, initiating disciplinary proceedings in the Court of Appeals. D.C. Ct. App. R. 49(d), (e);

*Simons v. Bellinger*, 643 F.2d 774, 775 (D.C. Cir. 1980). Upon request, the Committee may also

provide opinions as to what constitutes the unauthorized practice of law. D.C. Ct. App. R.

49(d)(3)(G)(i). After being advised by DCPS that "DCPS does not authorize the appearance of

non–D.C. bar[red] attorneys before its tribunals and that DCPS does not undertake to regulate the

practice of persons who appear before it," the Committee ultimately concluded, in a letter dated

April 28, 2005, that "attorneys who are not admitted to the D.C. Bar may not engage in the practice

of law in administrative proceedings before DCPS." Pls.' Ex. 11 at 2. It was on this basis that, on

---

[2] Plaintiffs' Memorandum in Support of their Motion for Summary Judgment [Dkt. #8-2].

3

August 4, 2005, DCPS denied Plaintiffs' attorneys' fees requests and advised them of their right to appeal. Pls.' Ex. 16. Plaintiffs filed their complaint in this Court on September 30, 2005.

## II. LEGAL STANDARDS

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits filed pursuant to discovery show that, first, 'there is no genuine issue as to any material fact' and, second, 'the moving party is entitled to a judgment as a matter of law.'" *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting Fed. R. Civ. P. 56(c)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor; it is not permitted to make credibility determinations or weigh the evidence. *Holcomb*, 433 F.3d 895 (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000)).

Summary judgment is not a "disfavored procedural shortcut" but, rather, an aid to the "just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "The mere existence of *some* alleged factual dispute between the parties will not defeat summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Holcomb*, 433 F.3d at 895 (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Id.* "An issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party 'fails to make a showing

4

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 322).

## III. DISCUSSION

### A. The Unauthorized Practice of Law

D.C. Court of Appeals Rule 49 prohibits the unauthorized practice of law.  It begins:

"No person shall engage in the practice of law in the District of Columbia or in any manner hold

[himself] out as authorized or competent to practice law in the District of Columbia unless enrolled

as an active member of the District of Columbia Bar, except as otherwise permitted by these Rules."

D.C. Ct. App. R. 49(a).  Two exceptions to Rule 49 are relevant here: (c)(5) and (c)(8).

#### 1. Rule 49(c)(5)

Rule 49(c)(5) permits an attorney not licensed in the District to practice before a

department or agency of the D.C. government where:

> (A) Such representation is confined to appearances in proceedings before tribunals of that department or agency and other conduct reasonably ancillary to such proceedings;
>
> (B) Such representation is authorized by statute, or the department or agency has authorized it by rule and undertaken to regulate it;
>
> (C) If the practitioner has an office in the District of Columbia, the practitioner expressly gives prominent notice in all business documents of the practitioner's bar status and that his or her practice is limited consistent with this section (c); and
>
> (D) If the practitioner does not have an office in the District of Columbia, the practitioner expressly gives written notice to clients and other parties with respect to any proceeding before tribunals of that department or agency and any conduct reasonably ancillary to such proceedings of the practitioner's bar status and that his or her practice is limited consistent with this section (c).

D.C. Ct. App. R. 49(c)(5).  There is no question that "this exception requires satisfaction of all three enumerated conditions." D.C. Ct. App. R. 49 commentary.  There is also no question that condition (B) is not satisfied under these circumstances.  No statute authorizes attorneys not licensed in the District of Columbia to practice before DCPS.  *See* D.C. Ct. App. R. 49(c)(5)(B).  And neither DCPS nor its umbrella agency, the D.C. Board of Education, has "authorized [such practice] by rule" or "undertaken to regulate it."  *See id.*; 5 D.C. Mun. Reg. 100.6 (2007) ("The Board of Education is an independent agency of the government of the District of Columbia that is vested with control of the public schools of the District."); Pls.' Ex. 7 (Jan. 27, 2005, DCPS memo) ("The D.C. Board of Education is the entity that regulates the conduct of hearings and [it] has not taken any action to authorize the practice of non–D.C. attorneys.").

Plaintiffs cite no statute or rule to the contrary.  Instead, they argue that, until April 19, 2005, the "Board of Education . . . had not promulgated a policy that restricted the representation of parents in administrative due process hearings to active members of the D.C. bar." Pls.' Mem. at 17.  But that argument turns the issue on its head.  Rule 49 requires that the agency adopt a rule before exception (c)(5) becomes available; not that the exception is available until the agency rules that it is not.  *See* D.C. Ct. App. R. 49(c)(5)(B).  Plaintiffs also suggest that DCPS's alleged "policy" of allowing unlicensed attorneys to practice in administrative hearings amounted to a "de facto" rule or regulation satisfying the exception. Pls.' Reply[3] at 5.  The record evidence, however, suggests that even if there were such a policy, it ended no later than January 27, 2005, when DCPS General Counsel Veleter Mazyck circulated to DCPS attorneys and hearing officers a memorandum arguing

---

[3] Plaintiffs' Reply and Memorandum of Points and Authorities in Opposition to the Defendants' Cross-Motion for Summary Judgment [Dkt. #18].

that Rule 49 requires the disqualification of attorneys not licensed in the District. Pls.' Ex. 7. In any

event, even assuming such a policy existed during the relevant period and could be considered a de

facto rule, the record is devoid of any evidence that DCPS or the Board of Education had also

"undertaken to regulate" the practice of non–D.C. barred attorneys in any manner. *See* D.C. Ct. App.

R. 49(c)(5)(B).

Accordingly, the Court concludes that Rule 49(c)(5) did not and does not permit an

attorney not licensed in the District to practice law in administrative proceedings before DCPS.

### 2. Rule 49(c)(8)

Rule 49(c)(8) allows an attorney licensed elsewhere with a pending application to the

D.C. Bar to practice under the supervision of a D.C.–licensed attorney for a limited period of time:

> Practicing law from a principal office located in the District of
> Columbia, while an active member in good standing of the highest
> court of a state or territory, under the direct supervision of an
> enrolled, active member of the District of Columbia Bar, for one
> period not to exceed 360 days from the commencement of such
> practice, during pendency of a person's first application for admission
> to the District of Columbia Bar; provided that the practitioner has
> submitted the application for admission within ninety (90) days of
> commencing practice in the District of Columbia, that the District of
> Columbia Bar member takes responsibility for the quality of the work
> and complaints concerning the services, that the practitioner or the
> District of Columbia Bar member gives notice to the public of the
> member's supervision and the practitioner's bar status, and that the
> practitioner is admitted pro hac vice to the extent he or she provides
> legal services in the courts of the District of Columbia.

D.C. Ct. App. R. 49(c)(8). Plaintiffs invoke this exception only with respect to Mr. Lammers. Pls.'

Mem. at 19 ("In the cases at bar, the attorneys representing Plaintiffs[] were either active members

of the D.C. bar or attorneys licensed in other jurisdictions who practiced . . . under Rule 49(c)(5) or[,]

in the case of Marshall Lammers, under 49(c)(8).").

The record reflects that Mr. Lammers became associated with the Brown firm during the last week of March 2005. Pls.' Ex. 15 at 2. Already licensed in New Jersey and Maryland, he submitted his first application to "waive in" to the D.C. Bar on April 5, 2005, *id.*, and was admitted on November 14, 2005, Defs.' Ex. 2 at 3 [Dkt. #10-5]. Plaintiffs submit a letter that Mr. Lammers wrote to the Committee dated May 17, 2005, in which Mr. Lammers asserted that he had satisfied the requirements that he properly notify the public of his bar status and seek admission pro hac vice where necessary, Pls.' Ex. 15 at 2-4, assertions the Defendants do not dispute. The sole remaining factors, then, are whether Mr. Lammers was "under the direct supervision of an enrolled, active member of the District of Columbia Bar" and whether that "District of Columbia Bar member t[ook] responsibility for the quality of the work and complaints concerning the services" that Mr. Lammers provided. D.C. Ct. App. R. 49(c)(8).

Defendants contend that "there was not even a creditable pretense of [Mr. Lammers's] being under the 'direct supervision' of a D.C. Bar member." Defs.' Mem.[4] at 15. They argue that Mr. Lammers "prepared documents, signed them, appeared before hearing officers, represented Plaintiffs at hearing, signed settlement agreements, and provided legal advice without the direct supervision of any attorney. In many instances, the [hearing officer decisions] themselves showed [him] to have appeared and participated in hearing proceedings by [himself]." *Id.* (citations omitted). The record demonstrates that Mr. Lammers did, in fact, appear alone in many proceedings. *See* Compl. Exs. 2, 11, 32, 36, 41, 42. But this does not mean that he was not under the "direct supervision" of a D.C. Bar member for purposes of Rule 49(c)(8).

---

[4] Defendants' Memorandum of Points and Authorities in Support of Defendants' Cross-Motion for Summary Judgment [Dkt. #10-1].

Rule 49(c)(8)'s "direct supervision" requirement is governed by the standard embraced by Rule 5.1(b) of the D.C. Rules of Professional Conduct, which provides: "A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct." Committee Opinion 12-02 (Sept. 16, 2002) (regarding the supervision of attorneys under Rule 49(c)) (quoting D.C. R. Prof'l Conduct 5.1(b)). The Committee has opined that "whether reasonable supervision requires the supervising attorney to attend personally with the supervised lawyer such events as a trial, hearing, or meeting depends on the circumstances." *Id.* It has elaborated: "Thus, in deciding whether to be present . . . , the supervising attorney should consider, among other factors, the experience and skill of the supervised attorney, the nature of the case, and the type of proceeding. . . . In some situations, a responsible supervisor ought to be present . . . with the supervised attorney, but in others, the supervisor may reasonably decide that he or she does not need to be present." *Id.*

In his May 17, 2005, letter to the Committee, Mr. Lammers asserted that he had read Opinion 12-02 and discussed it with his employer and supervisory attorney, Mr. Brown. Pls.' Ex. 15 at 2-3. He explained Mr. Brown's supervisory efforts as follows:

> [Mr. Brown] insisted that I observe hearings involving similar issues to my clients' that were handled by several different attorneys so that I would be exposed to the procedures and advocacy styles before I attended hearings as counsel. He also insisted that I regularly consult other firm attorneys and my wife (who has 3 years of special education law experience as an attorney) regarding strategy, client issues, legal interpretations, and best practices. I have met all these obligations. The cases I have handled involve primarily settlement or hearing officer determination violations of the opposing party, which my supervising attorney views as uncomplicated issues. He has been provided a resume with my experience and reviews my client cases to determine if he needs to be present with me at a hearing. He has not determined his presence was required [at] any of my hearings yet,

9

> but has told me he may choose to do so in the future, depending on
> the types of cases I handle. He has also provided me with an
> open[-]addressed letter affirming his supervision and responsibility
> for my conduct[,] which I have submitted to opposing counsel and
> hearing officers when they question notice of his supervision.

*Id.* at 3. In the same letter, Mr. Lammers further stated: "I ensure that full copies or originals of all

letters, filings, faxes, hearing officer determinations, settlement[s], proposed settlements, . . . and any

other written communications . . . are immediately placed in my client's [sic] file so that my

supervisor can review and comment on them and my performance as he requires." *Id.* Finally, Mr.

Lammers indicated: "I bring my immediate concerns regarding procedure and case strategy to [Mr.

Brown] in person and he provides me with guidance when I ask for it or when in his discretion he

determines I need it." *Id.*

Defendants offer no evidence to controvert these assertions. Accordingly, the Court

concludes that Mr. Lammers was in substantial compliance with Rule 49(c)(8)'s "direct supervision"

requirement during the relevant time period.

* * * * *

The Court thus concludes that Mr. Hull, who was licensed to practice in the District

of Columbia, and Mr. Lammers, who was in substantial compliance with Rule 49(c)(8), were not

engaged in the unauthorized practice of law during the relevant time period. The Court will

therefore deny Defendants' motion for summary judgment as to these attorneys to the extent it relies

on such a theory.

However, because Rule 49(c)(5) does not permit an attorney not licensed in the

District of Columbia to practice law in administrative proceedings before DCPS, and because

Plaintiffs rest on exception (c)(5) alone for Mr. Hill, Ms. McAllister, and Mr. West, the Court must

conclude that those attorneys were engaged in the unauthorized practice of law during the relevant

time period.

### B. The Availability of Attorneys' Fees for Unlicensed Lawyers

Having concluded that Mr. Hill, Ms. McAllister, and Mr. West were engaged in the

unauthorized practice of law, the question remains: Are they *necessarily* barred from recovering

attorneys' fees under the IDEA?

The Court finds helpful guidance in two analogous cases from the Ninth Circuit. In

the earlier one, arising out of California, that court considered "whether a lawyer who prevails in a

state administrative proceeding must be admitted to the California State Bar in order to collect

attorney's fees under the IDEA." *Z.A. v. San Bruno Park Sch. Dist.*, 165 F.3d 1273, 1275 (9th Cir.

1999). In California, practicing law without a license is a misdemeanor, *id.* (citing Cal. Bus. & Prof.

Code §§ 6125, 6126(a)), and case law explicitly holds that "no person may recover compensation

for services as an attorney in California unless he or she was a member of the state bar at the time

the services were rendered," *id.* (citing *Birbrower v. Superior Court*, 949 P.2d 1 (1998)).

Accordingly, the Ninth Circuit in *Z.A.* affirmed the district court's denial of attorneys' fees under the

IDEA. In closing, it commented:

> A person is or is not licensed to practice law in a particular forum.
> There is no halfway. If not licensed, one cannot practice in that
> forum, and cannot charge, or receive attorney's fees for such services
> under penalty of criminal law. [Counsel] was not licensed to practice
> in California, including in state administrative proceedings. While he
> could appear as a lay advisor, he cannot charge or collect fees for
> services as an attorney in those proceedings.

*Id.* at 1276. In the second case, *Shapiro v. Paradise Valley Unified Sch. Dist.*, 374 F.3d 857, 861

(9th Cir. 2004), which arose out of Arizona, the Ninth Circuit followed *Z.A.*, which it read to hold

11

that "[b]ecause the attorney . . . was not licensed to practice in California, he was not entitled to

collect attorney's fees." The *Shapiro* court was unpersuaded by the plaintiffs' attempt to distinguish

*Z.A.* on the ground that the right to practice law in Arizona is regulated entirely by the judiciary, not

partly by statute, *id.* at 861-62, and did not indicate whether the unauthorized practice of law in

Arizona is a crime, as it is in California.  Also absent from the *Shapiro* court's analysis was any

indication that Arizona law prohibits the collection of attorneys' fees by unlicensed attorneys.

In the District of Columbia, engaging in the unauthorized practice of law constitutes

misconduct and is grounds for disbarment, *In re Mbakpuo*, 829 A.2d 217, 220 n.4 (D.C. 2003), but

is not a crime, *id.* at 219 n.2.  However, case law indicates that an attorney may not be awarded

attorneys' fees for legal services rendered while unlicensed in the jurisdiction.  In *Finch v. Finch*,

378 A.2d 1092 (D.C. 1977), Sara Finch was granted a divorce from her husband; both appealed

various provisions of the divorce order.  One of the husband's claims was that the trial court's award

of attorneys' fees to his wife was excessive.  The D.C. Court of Appeals declined to reach this issue,

however, because it noted that the wife's counsel "was admitted to practice . . . more than three

months after she filed the complaint and rendered other services in connection therewith."  *Id.* at

1094 n.2.  From this, it concluded that "some of the legal services for which [the wife's counsel] was

awarded compensation were rendered prior to her admission to practice law in this jurisdiction."  *Id.*

at 1094 (citing former D.C. App. R. 46 II(b)(1)).  The court continued: "Under the circumstances,

we must vacate so much of the trial court's Order as awarded the wife attorney's fees, and remand

for reconsideration in light of this part of the opinion." *Id.* (citing *Wood v. Wood*, 360 A.2d 488, 492

(D.C. 1976)).

Although *Finch* has not since been cited for this proposition, it remains good law. The *Finch* court cited two authorities in support of its holding: *Wood* and former D.C. Court of Appeals Rule 46 II(b)(1). *Wood* does not address the denial of attorneys' fees to unlicensed attorneys; it was apparently cited for the proposition that fee awards are reviewed for abuse of discretion. Former Rule 46 II was renumbered as Rule 49 effective January 1, 1985, at which time "[s]ome minor changes in the language of the rule were made." *Brookens v. Comm. on Unauthorized Practice of Law*, 538 A.2d 1120, 1121 n.1 (D.C. 1988). The "most significant" subsection of Rule 46 II — that is, Rule 46 II(b)(1) — read as follows:

> No person shall regularly engage in the practice of law in the District of Columbia or in any manner hold himself out as authorized or qualified to practice law in the District of Columbia unless he is an enrolled active member of the Bar.

*Simons*, 643 F.2d at 775 (quoting D.C. Court of Appeals Rule 46 II(b)(1)); *see also id.* at 787 n.7, 789 n.8 (MacKinnon, J., concurring) (quoting in full the 1973 and 1975 versions of Rule 46 II). Former Rule 46 II(b)(1) parallels current Rule 49(a), which provides:

> No person shall engage in the practice of law in the District of Columbia or in any manner hold [himself] out as authorized or competent to practice law in the District of Columbia unless enrolled as an active member of the District of Columbia Bar, except as otherwise permitted by these Rules.

D.C. Ct. App. R. 49(a). Former Rule 46 II(b), like current Rule 49(c), also contained a number of exceptions to the general proscription of unlicensed practice. One such exception allowed an attorney to practice before a federal "department, commission, or agency . . . to the extent that such practice is authorized by any rule or regulation of any such department, commission[,] or agency." *Simons*, 643 F.2d at 789 n.8 (MacKinnon, J., concurring) (quoting Rule 46 II(b)(7) (1975)). This

13

exception is maintained in Rule 49(c)(2). Rule 46 II(b) did not have similar exception for attorneys

practicing before D.C. government departments or agencies; exception (c)(5) was a new addition to

Rule 49. D.C. Ct. App. R. 49 commentary.

In sum, the foundation on which *Finch* rests, former Rule 46 II, though now

renumbered as Rule 49, is materially unchanged. *Brookens*, 538 A.2d at 1121 n.1. If anything, with

the introduction of exception (c)(5) the scope of its exceptions has grown; nevertheless, that

exception offers Plaintiffs' counsel no harbor. Thus, the Court finds that *Finch* remains good law

and prohibits an award of attorneys' fees for legal services rendered in violation of Rule 49. *See*

*Finch*, 378 A.2d at 1094 & n.2; *Z.A.*, 165 F.3d at 1275-76.

### C. The Relevance, if Any, of Good Faith

Plaintiffs resist this conclusion with the argument that their attorneys "provided

representation to the Plaintiffs . . . in good faith and consequently did not engage in the unauthorized

practice of law." Pls.' Mem. at 7. Although Plaintiffs do not indicate the source of the "good faith"

standard they urge, it may come from Rule 49(d)(3)(G)(ii), which provides:

> Conduct of a person which was undertaken in good faith, in
> conformity with, and in reliance upon a written interpretation or
> opinion of the Committee requested by that person shall constitute a
> prima facie showing of compliance with Rule 49 in any investigation
> or proceeding before the Committee or the Court of Appeals.

D.C. Ct. App. R. (d)(3)(G)(ii). This case, of course, is not an "investigation or proceeding before

the Committee or the Court of Appeals," which, when read in proper context, refers only to

disciplinary proceedings initiated by the Committee pursuant to Rule 49. Such proceedings can yield

only two possible sanctions: an injunction or contempt citation. D.C. Ct. App. R. 49(e)(2)

("Violations of the provisions of this Rule 49 shall be punishable by the Court of Appeals as

14

contempt and/or subject to injunctive relief."). *Finch*, however, makes clear that a third consequence — a bar to the recovery of attorneys' fees — can flow from the unauthorized practice of law, even in the absence of Rule 49 disciplinary proceedings. *See Finch*, 378 A.2d at 1094 & n.2.

Thus, in the present context, Plaintiffs' argument that their attorneys acted in good faith and "consequently" did not engage in the unauthorized practice of law strikes the Court as a non sequitur. While good faith may be relevant to the Committee's decision whether to initiate or abandon disciplinary proceedings in a particular case, the question before the Court is a different one. Here, under *Finch*, the Court need only determine whether Plaintiffs' attorneys did, in fact, engage in the unauthorized practice of law. This it has done.

Even if the "good faith" standard were applicable, however, Mr. Hill, Ms. McAllister, and Mr. West have failed to meet it. Rule 49(d)(3)(G)(ii) provides that an attorney may make a "prima facie" showing of compliance by demonstrating that his conduct was "[1] undertaken in good faith, [2] in conformity with, and [3] in reliance upon a written interpretation or opinion of the Committee requested by that person." Plaintiffs have not submitted any evidence to suggest that either Ms. McAllister or Mr. West ever requested, received, or relied on such a "written interpretation or opinion" regarding their conduct.[5]

---

[5] Plaintiffs do argue that their attorneys relied on an October 27, 2003, letter from the Committee to one Michelle S. Tuwiner. That letter reads, in relevant part:

> I am writing to formally respond to your inquiry to the Committee on Unauthorized Practice of Law.

> First, as we discussed, your letterhead should be modified to reflect that you are admitted in Maryland only.

> Second, I understand that your practice in the District of Columbia is limited to practice before the District of Columbia Public School

15

As for Mr. Hill, it is clear there is no qualifying "opinion." Rule 49(d)(3)(G)(i) provides that the Committee "may by approval of a majority of its members present in quorum provide opinions, upon [request], as to what constitutes the unauthorized practice of law," and notes that "[s]uch opinions shall be published in the same manner as opinions rendered under the Rules of Professional Conduct." Mr. Hill sought such an opinion in a February 1, 2005, letter to the Committee, Pls.' Ex. 8 at 1; however, in a follow-up letter dated July 28, 2005, Mr. Hill indicated that he had received no response to his February 1 inquiry, Pls.' Ex. 13 at 1. Thus, there is no evidence that an "opinion" as defined in Rule 49(d)(3)(G)(i) existed during the relevant period; in fact, Plaintiffs' own submissions are to the contrary.

The question remains, however, whether a qualifying "written interpretation" exists as to Mr. Hill. D.C. Ct. App. R. 49(d)(3)(G)(ii). Plaintiffs argue that a May 14, 2003, letter from the Committee to Mr. Hill fits the bill. That letter read, in full:

---

System pursuant to its rules and regulations. The Committee has determined that such a practice falls under the exception to Rule 49 as set forth in Rule 49(c)(5). Therefore, you may practice before D.C. public schools without being admitted in the District of Columbia.

Pls.' Ex. 6 at 1. While this response might satisfy Rule 49(d)(3)(G)(ii)'s "good faith" standard as to Ms. Tuwiner, it cannot as to Mr. Hill, Ms. McAllister, or Mr. West; the Rule plainly requires "reliance upon a written interpretation or opinion . . . *requested by that person*." D.C. Ct. App. R. 49(d)(3)(G)(ii) (emphasis added). In any event, Plaintiffs have submitted no evidence that Ms. Tuwiner worked for or had any connection with the Brown firm or its attorneys. Plaintiffs also do not assert that Ms. McAllister or Mr. West relied on or even knew of the Tuwiner letter. And although Mr. Hill apparently knew of and relied on the Tuwiner letter as early as February 1, 2005, *see* Pls.' Ex. 8 at 3, it is not self-evident that any such reliance was reasonable. It appears from the Tuwiner letter that the Committee's advice was based on whatever information — accurate or not — that Ms. Tuwiner provided. *See* Pls.' Ex. 6 at 1 (describing the Committee's "understand[ing]" of Ms. Tuwiner's situation, and referring to an earlier "discuss[ion]"). It is therefore unclear what assumptions underlie the Tuwiner letter or, despite Plaintiffs' arguments, how similarly situated Mr. Hill and Ms. Tuwiner were.

Thank you for your response dated December 12, 2002, regarding the complaint filed against you. Please forgive the delay in answering your letter.

The Committee having reviewed your response, we are happy to inform you that this matter now has been concluded.

With regard to any future representation of clients before any D.C. agencies, you might wish to familiarize yourself with the recent changes to D.C. Court of Appeals Rule 49(c)(5). In Opinion 11-02 of the District of Columbia Court of Appeals Committee on the Unauthorized Practice of Law, issued June 10, 2002, the following applies to your situation.

"The Court amended sections (c)(2), (c)(5), (c)(9) and (c)(10) to require lawyers with offices in the District of Columbia to disclose explicitly their bar status. This disclosure requirement does not apply to lawyers practicing under other exceptions, such as the (c)(1) and (c)(4) exceptions for government lawyers and the (c)(6) exception for in-house counsel. This new disclosure requirement could be satisfied with such statements as 'Admitted only in [specified states],' 'Not admitted in D.C.,' or in the case of (c)(9), 'Inactive member of D.C. Bar.' Written notice is preferred, but oral notice may be acceptable if it is reasonable under the circumstances, for example, in the case of a *pro bono* program where an attorney provides legal advice only over the telephone. This amendment thus gives practitioners flexibility in describing their bar status and makes practice under sections (c)(2), (c)(5), (c)(9) and (c)(10) consistent with practice under section (c)(8)."

Pls.' Ex. 4. The record provides some missing context. In his February 1, 2005, letter to the Committee, Mr. Hill explained that a complaint alleging that he had engaged in the unauthorized practice of law was filed sometime in fall 2002. Pls.' Ex. 8 at 1. On December 12, 2002, he responded to the complaint, apparently arguing that his practice before DCPS fell within Rule 49(c)(5). *Id.* It is to this response that the Committee's above-quoted May 14, 2003, letter refers.

This letter does not qualify as a written interpretation under Rule 49(d)(3)(G)(ii). First, it is not an interpretation at all. There is no analysis. In fact, analysis is pointedly avoided; the

17

letter simply informs Mr. Hill that the "matter . . . has been concluded." Pls.' Ex. 4. Second, the letter was not "requested by [him]" as required by Rule 49(d)(3)(G)(ii). It was instead a step in the Rule 49 disciplinary process, which provides the attorney an opportunity to respond to a complaint and permits the Committee to dispose of a matter without taking further action. *See* D.C. Ct. App. R. 49(d)(3)(D), (E). Third, the letter is devoid of context, and it remains unclear what, exactly, Mr. Hill said in his response that satisfied the Committee's concerns. Curiously, in response to Defendants' calling attention to Plaintiffs' omission of the complaint and Mr. Hill's response, Defs.' Opp'n[6] at 4, Plaintiffs stubbornly maintain that "neither of those documents is germane to [or] has any bearing on the issue of the alleged unauthorized practice of law," Pls.' Reply at 3. The Court disagrees. Without these documents, the Court could not possibly conclude that Mr. Hill acted in good faith. Fourth, the Committee's May 14, 2003, letter plainly does not state, as Plaintiffs assert, that Mr. Hill's practice "would be governed by the provisions of [Rule] 49(c)(5) without engaging in the unauthorized practice of law." Pls.' Mem. at 4. Indeed, such a reading is contradicted by an August 3, 2005, e-mail, written by the same Committee member, which stated that "[i]t is not at all clear that [Rule 49](c)(5) applied when you were practicing before DCPS." Pls.' Exh. 14.

* * * * *

Accordingly, Defendants' motion for summary judgment will be granted as to the claims of Plaintiffs represented by Mr. Hill, Ms. McAllister, and Mr. West.

---

[6] Defendants' Opposition to Plaintiffs' Motion for Summary Judgment [Dkt. #11-1].

18

**D. Permissible Fees**

Remaining are the claims for nine Plaintiffs, one represented by Mr. Hull (Compl.

Ex. 21) and eight by Mr. Lammers (Compl. Exs. 2, 3, 11, 32, 36, 41, 42, 52).[7] Defendants argue that

any award of fees to these Plaintiffs should be reduced because Plaintiffs attorneys (1) have failed

to demonstrate that their hourly rates were reasonable; (2) billed an unreasonable number of hours

for various tasks, including (a) time remote from the administrative hearings at issue, (b) time spent

establishing retainer relationships, and (c) time wasted by overstaffing administrative hearings; and

(3) have failed in many other instances to describe their activities in sufficient detail for the Court

to determine whether the hours billed were reasonable. Defs.' Mem. at 19-24. Defendants attach

to their summary judgment motion a fourteen-page list of specific charges they argue should be

stricken from Plaintiffs' fee request, and further ask that the Court reduce inadequately documented

charges by 50 percent. *Id.* at 23-24.

In their response on this point, Plaintiffs state that they "reserve the right to respond

to the reasonableness of the fee claimed after this court decides the pending dispositive motions."

Pls.' Reply at 2. As Defendants properly recognize, no such "right" exists. Defs.' Reply at 2-3. To

the contrary, "[i]t is well understood in this Circuit that when a plaintiff files an opposition to a

motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those

arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Bd. of Global*

*Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68

---

[7] The parties spend a fair portion of their briefs debating whether eight particular Plaintiffs (Compl. Exs. 22, 27, 30, 39, 40, 45, 47, 49) are "prevailing parties" for purposes of 20 U.S.C. § 1415(i)(3)(B). Defs.' Mem. at 11-13; Pls.' Reply at 10-14. In view of the Court's ruling as to the applicability of Rule 49(c)(5), these Plaintiffs' claims are no longer at issue. Defendants do not challenge the prevailing party status of the remaining Plaintiffs.

(D.C. Cir. 1997)). The district court's authority in this regard flows from Local Civil Rule 7(b), which provides:

> Within 11 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded.

LCvR 7(b). In this case, the Court entered a scheduling order under which both Plaintiffs and Defendants had an opportunity to move for summary judgment [Dkt. #7]. Defendants' summary judgment motion was timely filed on June 30, 2006 [Dkt. #10]. After the Court granted Plaintiffs an extension of time, their opposition was filed on August 14, 2006 [Dkt. #18]. At that time, Plaintiffs could have defended the reasonableness of their fee claims, countered the fourteen-page attachment in which Defendants painstakingly detailed their objections to those claims, or requested a second extension of time to respond. They did none of these things, and their opportunity to do so has now passed. Defendants' arguments on this point are therefore deemed conceded. *See* LCvR 7(b); *Hopkins*, 238 F. Supp. 2d at 178.

Accordingly, the Court will accept Defendants' objections to Plaintiffs' fee claims listed in Attachment 1 to Defendants' summary judgment motion, and will subtract them from Plaintiffs' fee awards with the following exception. The Court notes that for six of the remaining nine Plaintiffs (Compl. Exs. 11, 21, 32, 41, 42, 52), Defendants suggest a deduction for Plaintiffs' double-staffing the due process hearings; however, they suggest deducting charges for both staff members rather than just the additional one. This is unnecessarily harsh, and a narrower remedy is appropriate. Contrary to Defendants' proposal, the Court will *not* deduct the following charges:

| Complaint Exhibit | Student | Amount | Attorney | Description |
|---|---|---|---|---|
| 11 | R.C. | $1050 | Lammers | Due Process Hearing & Preparation 5/17/05 |
| 21 | D.G. | $322 | Hull | Due Process Hearing 3/25/05 |
| 32 | R.O. | $700 | Lammers | Due Process Hearing 5/5/05 |
| 41 | E.S. | $1575 | Lammers | Due Process Hearing & Preparation 5/4/05 |
| 42 | T.T. | $1225 | Lammers | Due Process Hearing & Preparation 4/11/05 |
| | | $1575 | Lammers | Due Process Hearing & Preparation 4/25/05 |
| | | $1925 | Lammers | Due Process Hearing & Preparation 5/6/05 |
| 52 | J.W. | $1225 | Lammers | Due Process Hearing & Preparation 4/18/05 |

Otherwise, the deductions proposed by Defendants in Attachment 1 are accepted and approved. The following chart takes these deductions into account and summarizes the fees that remain on the table:

| Complaint Exhibit | Student | Fees Requested | Costs Requested | Total Requested | Attach. 1 Deductions | Total Remaining |
|---|---|---|---|---|---|---|
| 2 | D.B. | $7,034.65 | $222.92 | $7,257.57 | 0 | $7,257.57 |
| 3 | R.B. | $8,778.00 | $281.79 | $9,059.79 | $787.50 | $8,272.29 |
| 11 | R.C. | $6,376.65 | $562.39 | $6,939.04 | $1,342.25 | $5,596.79 |
| 21 | D.G. | $6,841.80 | $314.78 | $7,156.58 | $820.75 | $6,335.83 |
| 32 | R.O. | $4,961.95 | $175.68 | $5,137.63 | $1,225.00 | $3,912.63 |
| 36 | C.R. | $7,156.10 | $449.74 | $7,605.84 | $740.25 | $6,865.59 |
| 41 | E.S. | $16,462.25 | $318.27 | $16,780.52 | $9,482.90 | $7,297.62 |
| 42 | T.T. | $16,589.65 | $551.27 | $17,140.92 | $3,615.50 | $13,525.42 |
| 52 | J.W. | $6,956.60 | $138.22 | $7,094.82 | $700.00 | $6,394.82 |

The Court uses the phrase "remain on the table" advisedly. Although it is clear that Defendants are liable for at least some of the remaining fees, the Court cannot yet award them because Plaintiffs have failed to demonstrate that the rates billed were reasonable.

21

The IDEA provides that an award of attorneys' fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C).  As this Court recently summarized,

> The usual method of calculating reasonable attorneys' fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Board of Trustees of the Hotel & Restaurant Employees Local 25 v. JPR Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998).  "This amount may then be adjusted by a multiplier in certain rare and exceptional cases, although there is a strong presumption that the lodestar figure . . . represents a reasonable fee." *Id.* (internal quotation marks omitted).  The "lodestar" approach to fee awards was established by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and is the approach followed by the federal courts in most fee award disputes.  *See Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002) ("Thus, the lodestar method today holds sway in federal-court adjudication of disputes over the amount of fees properly shifted to the loser in the litigation."). . . . The fee applicant bears the burden of demonstrating that the claimed rate and number of hours are reasonable.  *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

*Wilcox v. Sisson*, No. 02-1455, 2006 U.S. Dist. LEXIS 33404, at *6-11 (D.D.C. May 25, 2006).  In IDEA cases, the Second Circuit *requires* district courts to use the lodestar method.  *I.B. v. N.Y. City Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003); *B. ex rel. M.B. v. E. Granby Bd. of Educ.*, No. 05-6621, 2006 U.S. App. LEXIS 27014, at *7 (2d Cir. 2006) (unpublished).  The same approach is appropriate here.

"[A] fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community."  *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (citing, inter alia, *Blum*, 465 U.S. at 896 n.11); *see also Role Models Am. Inc. v. Brownlee*, 353 F.3d 962, 968-970 (D.C. Cir. 2004).  Plaintiffs'

22

submissions do not even begin to meet this burden. Not only have Plaintiffs' attorneys offered no

evidence regarding their general billing practices or the prevailing market rates, they have "not even

taken the basic step of submitting an affidavit detailing [their] experience and education." *Role*

*Models*, 353 F.3d at 970. Although under such circumstances the Court has the discretion to take

judicial notice of the reasonableness of the rates billed, *see, e.g., In re Olson*, 884 F.2d 1415, 1423

n.14 (D.C. Cir. 1989), or to make a downward adjustment to account for the failure to meet this

burden, *see, e.g., Role Models*, 353 F.3d at 970, guided here by literally no information about the

credentials of Messrs. Hull and Lammers, the Court finds neither approach appropriate.

Nevertheless, because Defendants' liability for some award of attorneys' fees[8] is clear,

the Court will give Plaintiffs two weeks to submit evidence adequate to meet their burden to

establish the reasonableness of the rates billed to Plaintiffs who were represented by Messrs. Hull

and Lammers. Plaintiffs' attention is specifically directed to the requirements summarized in *Blum*,

465 U.S. at 896 n.11, *Covington*, 57 F.3d at 1107, and *Wilcox*, 2006 U.S. Dist. LEXIS 33404, at *6-

11. To be clear, this is not an invitation to relitigate issues already decided in this Memorandum

Opinion. Plaintiffs shall limit their submissions to Messrs. Hull and Lammers, and to the fee claims

for Plaintiffs D.B. (Compl. Ex. 2), R.B. (Ex. 3), R.C. (Ex. 11), D.G. (Ex. 21), R.O. (Ex. 32), C.R.

(Ex. 36), E.S. (Ex. 41), T.T. (Ex. 42), and J.W. (Ex. 52). If Plaintiffs fail to meet this deadline, the

Court will consider this issue conceded, and will grant summary judgment to Defendants on the

remaining fee claims. This deadline will not be extended.

---

[8] The Court notes that the District of Columbia Appropriations Act of 2005, Pub. L. No. 108-335, 118 Stat. 1322, 1344 (2004), limits the amount of attorneys' fees the District of Columbia may pay to $4,000 per action. Thus, although the Court may ultimately award a greater amount of attorneys' fees, its order will require that the District pay only so much of the award as is permitted by this statutory fee cap. *Jester*, 474 F.3d at 822.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for summary judgment [Dkt. #8] will be denied in all respects and Defendants' motion for summary judgment [Dkt. #10] will be granted in part and denied in part. A memorializing Order accompanies this Memorandum Opinion.

Date: March 7, 2007
                                   _____/s/_____
                                   ROSEMARY M. COLLYER
                                   United States District Judge