# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| **GLORIA SANTAMARIA, for** | : |
| **L.A., a minor, et al.,** | : |
|  | : |
| **Plaintiffs,** | : |
|  | : |
| **v.** | :   **Civil Action No. 06-0577(RWR)** |
|  | : |
| **DISTRICT OF COLUMBIA, et al.,** | : |
|  | : |
| **Defendants.** | : |
|  | : |

---

## DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants, by counsel, reply herewith to the "Memorandum of Points and Authorities submitted in support of Plaintiffs Reply to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment and Opposition to Defendants' Cross Motion for Summary Judgment," filed August 3, 2007 ("Plaintiffs' Opposition").

## ARGUMENT

This is an action by twelve Plaintiffs originally seeking $104,992.19 in their Complaint, but are now seeking $78,825.86 in attorneys' fees and costs for prevailing at administrative hearing under the Individuals With Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1400 et seq. ("IDEIA"). In light of their representations in the Defendants' Summary Judgment Motion, and below, the Defendants submit that the proper award for attorneys' fees and costs for the remaining twelve Plaintiffs should actually be $22,860.89. See Attachment B.

I. **PLAINTIFFS CONCEDE DEFENDANTS' ARGUMENT THAT THEIR HOURLY RATES ARE TOO HIGH, BUT THEIR NEWLY PROPOSED RATES STILL DO NOT REFLECT THE PREVAILING MARKET RATE IN THE COMMUNITY.**

In their Motion for Summary Judgment ("Motion"), Defendants argued that the attorneys' fees and costs sought by Plaintiffs exceeds the prevailing market rate in the community for handling IDEIA administrative hearings.  Motion pp. 5-16.  Similarly, it was argued that the rates billed by paralegals, law clerks and advocates also exceeded the prevailing market rate. Motion pp. 8-15.  Thus, Defendants proposed the appropriate reductions in attorneys' fees and costs based on hourly rates for this type of litigation paid to attorneys with similar experience in this community.  Motion pp. 9-16 and Motion Attachment A.

A chart in the Plaintiffs' Opposition (pp. 6-7) now discloses that the hourly rates sought at this time are different than those requested in the Complaint.  A comparison of the invoices attached to the Complaint with those attached to the Plaintiffs' Summary Judgment motion shows the documents to be identical, except that the latter contains a different lower hourly rate.  The newly proposed rates are reflected under the chart heading "Laffey Matrix Invoice." Plaintiffs' Opposition pp. 6-7.  Plaintiffs' Opposition is the first time Plaintiffs discuss that they are seeking these new rates.  Plaintiffs' newly proposed rates, submitted without arguments or authority, are simply a concession that the original rates were in fact too high.

However, the new Laffey Matrix rates are still too high because Plaintiffs have not made the necessary showings that any of the cases here involve complex federal litigation, or that the attorneys involved have the skill, experience, or reputation of

comparable attorneys in the relevant market to command <u>Laffey</u> <u>Matrix</u> rates as explained below.

### A.    The Laffey Matrix Rates Should Not Be Applied To These IDEIA Attorneys' Fees Claims.

The <u>Matrix</u> – a tabulation by the United States Attorney's Office for the District of Columbia showing prevailing attorneys' hourly rates for complex federal litigation – grew out of the court's decision in <u>Laffey v. Northwest Airlines</u>, 572 F. Supp. 354 (D.D.C. 1983), <u>aff'd in part, rev'd in part on other grounds</u>, 74 F.2d 4 (D.C. Cir. 1984), <u>cert. denied</u>, 472 U.S. 1021 (1985), as modified by <u>Save Our Cumberland Mountains, Inc. v. Hodel</u>, 857 F.2d 1516, 1524 (D.C.Cir. 1988) ("<u>SOCM</u>").  "The matrix creates one axis for a lawyer's years of experience in complicated federal litigation and a second for rates of compensation."  <u>Griffin v. Wash. Convention Ctr.</u>, 172 F. Supp. 2d 193, 197 (D.D.C. 2001).

The <u>Laffey</u> case itself involved "complex employment discrimination litigation." and the Matrix was intended and designed to determine fees in these types of cases. [1] 572 F. Supp. at 374.  The Matrix itself makes that clear: the 11-19 years category applies to "experienced federal court litigators," and the 20+ years category applies to "very experienced federal court litigators." Moreover, <u>Covington v. District of Columbia</u>, 57 F.3d 1101 (D.C. Cir. 1995) a decision involving "the prevailing market rates for complex federal litigation in the District of Columbia," <u>id</u>. at 1103, stated that under the <u>SOCM</u>

---

[1] In determining a proper hourly fee, the Court in <u>Laffey</u> required a consideration of the prevailing rates in the relevant legal market, including the type of work performed.  The Court relied on affidavits attesting to the attorneys experience and expertise and the hourly rates of comparable lawyers as evidence of the prevailing rates.  "[T]he court finds that the relevant legal market in this action is complex employment discrimination litigation and that this market is subject to the same hourly rates that prevail in other complex litigation." <u>Laffey v. Northwest Airlines</u>, 572 F. Supp. 354, 374.  "The court reiterates that the appropriate benchmark for a fee award is the prevailing rate for "the type of work for which [the fee applicant] seeks an award." <u>Id</u>.

decision, attorneys "have to state their *federal court experience* in order to get <u>Laffey</u> rates." 57 F.3d at 1108 n. 17 (emphasis added).  And <u>see id</u>. at 1110 (petitioners' burden to justify its rates was met where they "submitted data demonstrating their attorneys' experience in the legal profession and *in litigating complex federal court cases*" (emphasis added)). Even within "complex federal litigation," the <u>Laffey</u> court noted that the <u>Matrix</u> was developed to reflect rates charged by attorneys with "exceptional" experience, expertise and reputations – attorneys with "prominence and ability" that practiced in "premier" firms.  <u>Laffey</u>, 572 F. Supp. at 372.

### B.      The Fees Claims Are Not Based On Complex Federal Litigation.

An IDEIA case generally involves gathering school records and identifying whether any of the student's rights to a free and appropriate public education ("FAPE") have been denied, and if so, an attempt to resolve the matter at a resolution meeting is required by the statute.  Only when this process fails, a due process hearing is convened. Preparation for the due process hearing requires (1) the filing of a hearing request form, (2) participation in a resolution session (in which the parties attempt to resolve the Complaint prior to a hearing), and if the resolution meeting fails, (3) the submission of a copy of all documents and witnesses to be introduced at hearing and, (4) a hearing (typically, a few hours long), where documents are introduced and testimony given, at the conclusion of which the matter is taken under advisement by the administrative Hearing Officer.  <u>See</u> Defendants' Exhibit 1, Declaration of DCPS Office of the General Counsel ("OGC") Acting Supervisory Attorney Quinne Harris-Lindsey dated September 13, 2006.

The <u>Matrix</u> is not <u>ipso</u> <u>facto</u> determinative of the proper hourly rate here because the twelve claims were resolved in front of administrative hearing officers convened at

DCPS and none of the claims include the type of complex federal litigation to which the Matrix was intended to apply.  Plaintiffs have not demonstrated any claims were difficult, complex, or should deserve more than the prevailing market rate for the type of representation involved.

While the Matrix rates may be reasonable for more advanced federal court trial work entailing motions, depositions, preparing witnesses, working with experts, and participating in a courtroom trial, *the invoices and HODs in this record clearly show that none of these activities took place*.  See Exhibit 2.  There were no pre-hearing interrogatories, no production of documents or depositions, no psychiatrists or psychologists testifying about learning disorders or impairments, no briefings of intricate statutory or constitutional issues, no pre-trial briefings, no lengthy hearings, no protracted oral arguments, and usually no motions filed. Compare Covington v. District of Columbia, supra, 57 F. 3d at 1106, where the District Court (839 F. Supp. at 894) had noted that '[p]laintiffs' counsel handled very well this complicated federal case, which involved the constitutional claims of ten plaintiffs against sixteen defendants, lengthy discovery, many motions and a jury trial." [2]

---

[2] None of the hearings here was complex or complicated. For example, as to **P.B. (Complaint Exhibit 4)**, the invoice shows conferences with parent, drafting correspondence (not legal opinion letters), reviewing evaluations, drafting a hearing request, attending a resolution meeting, organizing the time and place of the hearing and phone calls to implement the HOD; as to **K.B. (Complaint Exhibit 5)**, the invoice specifies discussions with the child's attorney, conferences with the parent, phone calls with the parent and DCPS, drafting letters to parent, school and DCPS, preparing and filing due process hearing request, and preparing the hearing disclosure to DCPS and attending hearing; as to **L.F. (Complaint Exhibit 6)**, the invoice indicates requests for evaluations, review of evaluations, drafting correspondence to the child's parent and DCPS, preparation for hearing, preparing and sending a referral letter, drafting and filing the due process hearing request, and attending the hearing; as to **M.J. (Complaint Exhibit 9)**, invoiced tasks include discussions with advocate, conference with parent, drafting letters, memos to attorneys, preparation and filing of Due Process hearing request, preparing for hearing, and attending hearing; as to **D.K. (Complaint Exhibit 11)**, the invoice identifies charges made for reviewing documents, conferences with the parent, discussions with the child's attorney, drafting letters to DCPS and the parent, preparing and filing due process hearing request, brief phone calls with the parent, preparing disclosures and attending hearing.

Indeed, the work described in the invoices was not complex and a majority of the work involved was accomplished by paralegals or advocates. For example, in S.Y's invoice, R.G. billed $360.00 an hour to review dates and deadlines, while paralegal Y.A. also "tickled" deadlines for $95.00 per hour. Exhibit 2, Invoice of RW. Similarly, on page 1 of P.B.'s invoice, attorney J.F. billed $195.00 to call a parent about a resolution meeting while five lines later, paralegal H.R. billed the client $95.00 for a call to the parent regarding the hearing requested. Exhibit 2, Invoice of P.B. Thus, the attorneys' time is billed at a much higher rate than that of the paralegals *for almost identical non-complex litigation tasks.* These few examples are demonstrative of the invoices overall.

Even the non-attorney advocates completed similar work as the attorneys, yet billed at a much lower rate. For example, K.B's invoice (p. 2), D.D. –the advocate— reviewed the complaint billing $185.00 per hour, whereas attorney C.W. reviewed a hearing request billing $365.00. Exhibit 2, Invoice of K.B. On (p. 2) of L.F.'s invoice, D.D.—the advocate—reviews evaluations for $185.00 per hour and one line down,

---

With respect to **A.M. (Complaint Exhibit 12)**, responsibilities included making phone calls, attending conferences with clients, discussions with DCPS, reviewing files and evaluations, drafting letters, visiting schools, preparing for meetings and hearing, and attending hearing. As to **S.M. (Complaint Exhibit 13)** , the invoiced work involved phone calls, preparing placement packages, discussions with the child's attorney, reviewing files, drafting letters, and preparing for meetings and due process hearing and attending due process hearing. As to **J.M. (Complaint Exhibit 14)**, services included review of the file, letters to DCPS, the preparation for the due process hearing, and drafting correspondence letters to update client's parents. With regards to the invoice for **J.P.(Complaint Exhibit 15),** services were conducted involving conferences with client's parents, correspondence to parents and the school, preparing and filing for Due Process hearing, and preparation of the disclosure to DCPS. As to **A.P. (Complaint Exhibit 16)**, services were conducted involving drafting letters, teleconference, IEP meeting, preparing for hearing, and attending hearing. As to **R.W. (Complaint Exhibit 20)**, services were conducted involving preparation of referral packages, telephone calls to schools, correspondence, discussions with schools, preparation for hearing and attending hearing. As to **S.Y. (Complaint Exhibit 22)**, services were conducted involving drafting letters to schools, conferences with parents, preparing for hearing and attending hearing.

attorney D.H. reviews evaluations for $235.00 per hour.  Exhibit 2, Invoice of K.F.   This list is not exhaustive. [3]

Moreover, in Agapito v. District of  Columbia, Civ. No. 05-1935, (D.D.C., March 7, 2007), the Court noted a Brown Firm attorney's admission that the nature of his IDEIA work was not complex:

> [T]he cases I have handled involve primarily settlement or hearing officer determination violations of the opposing party, which my supervising attorney views as uncomplicated issues. . . .

See Memorandum Opinion p. 9.

Even where Plaintiffs cited cases involving students with disabilities where the Matrix has been applied (Plaintiff's Opposition pp. 4-5), those cases are not analogous here.  Blackman v. District of Columbia, 57 F. 3d 1101, 1105 &n.14, 1109 (D.C. Cir 1995) and Watkins v. Vance, 328 F. Supp. 2d 27 (D.D.C. 2004) involved class action litigation with claims arising under 42 U.S.C. §§ 1983.  These cases involved complex legal matters arising out of alleged systematic failures by DCPS. [4]

---

[3] In Defendants' Motion (p. 2), and in Defendants' Opposition (fn p. 2 and fn p. 5) Defendants point out that Plaintiffs list of remaining Plaintiffs is wrong.  None of the Plaintiffs' documents address or correct this error. In fact, Plaintiffs' Opposition still attached Plaintiff S.G.'s invoice even though Plaintiffs' own praecipe voluntarily dismissed S.G. on June 8, 2007.  Further, Plaintiff A.M.'s invoice is still missing from Plaintiffs' statement of material facts.

[4] See, e.g., Blackman v. District of Columbia, 59 F. Supp. 2d 37, 43 (D.D.C. 1999).

> In order to determine the prevailing market rates in the relevant community, . . . the Court will use as a point of reference the updated Laffey fee matrix prepared by the United States Attorney's Office. . . See Covington v. District of Columbia, 57 F.3d at 1109 ("Although fee matrices are somewhat crude . . [they] do provide a useful starting point").

The Defendants acknowledge that the Blackman decision, cited in the Matrix Explanatory Notes, as well as some more recent District Court decisions, have referenced the Matrix in IDEIA attorneys' fee litigation.  However, none of the decisions referring to the Matrix, have analytically addressed the propriety of applying the Matrix, it was simply applied.  With respect, and for the reasons set forth herein, the Defendants believe the summary employment of the Matrix in those cases to have been in error.

### C.    Even If The Matrix Is Deemed Relevant, The Plaintiffs Have Not Supported Its Application Here.

Plaintiffs' Opposition (p. 4) states, "in the Plaintiffs' Motion for Summary Judgment, the Plaintiffs indicated the Court's use and applicability of the Laffey Matrix." This is wrong.  Plaintiffs' Motion for Summary Judgment (p. 4) merely mentions "Laffey" one time—"the Court should apply the Laffey Matrix the ten [sic] attorney fee cases in which the Court found that the parent prevailed."  There is no Matrix attachment, citation or legal authority citing the proper standard to apply the Matrix or even an explanation of what the Laffey Matrix is.  The only statement in Plaintiffs' Summary Judgment Motion is a conclusion of law that the Matrix should apply.

In their Opposition (p. 4), Plaintiffs do acknowledge that in order for the Matrix to apply, a petitioner must show 1) customarily reduced rates are charged for non-economic reasons, 2) information documenting attorneys' skill experience and reputation; and 3) evidence of prevailing market rates in the community (citing Covington, supra.).  But, Plaintiffs argue that they have complied with those requirements, because they have "submitted detailed itemizations of the time expended in each of the claims and limited those expenditures of billable time to the time that was necessary for completion of said matters." Opposition p. 5.  Plaintiffs also make a similar argument (p. 5), stating that their burden is satisfied with "the submission of [invoices] sufficiently detailed to allow a judicial determination of whether the hours claimed are justified."

Plaintiffs' arguments are irrelevant here. Plaintiffs' detailed invoices clearly do not make the necessary showings of hourly rates by demonstrating through facts and affidavits the attorneys' skill and reputation, and the prevailing market rate as required in Covington.

(Plaintiffs seem to be mistakenly arguing the first prong of the <u>Hensley,</u> <u>infra</u>.,
requirement regarding whether the hours expended were reasonable where "reasonable
fees are determined by multiplying the number of reasonable hours expended by the
reasonable rates per hour." <u>Hensley v. Eckerhard</u>, 461 U.S. 424, (1983); <u>Blum v</u>
<u>Stephenson</u>, 465 U.S. 866, (1984).) That is irrelevant here since Defendants are disputing
the hourly rates billed and not whether the hours expended were reasonable.)

Plaintiffs' Opposition does make a faint attempt to argue the <u>Matrix</u> rates should
apply. However, these arguments are unsupported by any legal authority. Plaintiffs
Opposition (p. 6) states that "each affidavit is consistent with the market rates in this
community for special education cases, which is $350.00 per hour for clients capable of
paying reasonable attorneys fees." Plaintiff does not offer any legal authority, standard,
or test, to demonstrate that $350.00 per hour is the market rate for clients capable of
paying reasonable attorneys' fees. Providing no such authority is grounds for this
argument to be waived.

The failure to develop an argument constitutes a waiver. <u>Blise v. Antaramian</u>, 409
F.3d 861, 866 n.3 (7th Cir. 2005), <u>citing</u> <u>Kramer v. Banc of America Securities</u>, LLC,
355 F.3d 961, 964 n. 1 (7th Cir. 2004) ("We have repeatedly made clear that perfunctory
and undeveloped arguments that are un-supported by pertinent authority, are waived
("even where those arguments raise constitutional issues.") and <u>quoting</u> <u>United States</u> v.
<u>Berkowitz</u>, 927 F.2d 1376, 1384 (7th Cir.1991).

Notwithstanding, this argument is just wrong. Both the <u>Laffey</u> <u>Matrix</u> (Exhibit 3)
and the DCPS fees guidelines (Exhibit 4) and case law (<u>Covington</u>, <u>supra</u>) provide for
hourly rates *based on the lawyers' skill reputation and experience.* There is no such

thing as a flat rate when clients are seeking an award of fees under a fee shifting statute such as the IDEIA.

In further support of the application of the <u>Matrix,</u> Plaintiffs quote <u>Covington v. District of Columbia</u>, 57 F. 3d 1101, 1105 &n.14, 1109 (D.C. Cir 1995), "the prevailing market rate can be determined by reference to the so-called Laffey Matrix."  Opposition (p. 4).  The type of litigation in <u>Covington,</u> where prisoners were seeking fees for prevailing in their civil rights claims, is not analogous to representation of students at administrative due process hearings.  Moreover, "the *Covington* plaintiffs submitted a good deal of evidence establishing the prevailing market rates for comparably experienced attorneys handling complex federal litigation." <u>Covington,</u> <u>supra</u> at 1105.

The existence of the <u>Matrix</u> does not preclude the need for the showings described in <u>Covington v. District of Columbia</u>, <u>supra</u>, 57 F.3d at 1107:

> [A] fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: [1] the attorneys' billing practices; [2] the attorneys' skill, experience, and reputation; and [3] the prevailing market rates in the relevant community.

Even the Court in <u>Laffey</u> refused to apply the <u>Matrix</u> mechanically, reducing the <u>Matrix</u> rates by one-third in awarding fees to one attorney in the case, even though it expressed no dissatisfaction with his performance:

> Because Feldman graduated from law school 19 years prior to the trial, Plaintiffs request an award of $ 150 per hour for his time. The Court has reviewed Feldman's resume . . . and concludes that it does not reflect that level of superior achievement, expertise, skill and/or reputation that justifies the hourly rates awarded Plaintiffs' retained counsel. This Court cannot assume that these qualities are a natural function of the passage of time following law school graduation.

<u>Laffey</u>, 572 F.Supp. at 375.  See, e.g., <u>Muldrow v. Re-Direct, Inc.,</u> 397 F. Supp. 2d 1, 4 (D.D.C. 2005), refusing to award the Laffey rates for a civil negligence case:

[U]se of the Laffey matrix as a measure of appropriate fees for complex federal litigation has gained acceptance in this Circuit. See, e.g., Salazar, 123 F. Supp. 2d at 13. n4.  However, a more troubling issue is whether these extreme high-end fees should apply in what is in essence a relatively straightforward negligence suit. Although plaintiff brought a § 1983 claim, as defendant points out (Opp'n at 3), plaintiff presented essentially the same evidence in support of her § 1983 and negligence claims. Furthermore, the case involved a single plaintiff and a single defendant; there were few pre-trial motions; the case was not vigorously litigated by defendant; and plaintiff's attorneys had already thoroughly investigated defendant in a prior case that raised similar issues.  These factors all distinguish this lawsuit from the type of case in which Laffey fees are typically awarded. For example, the attorneys in Covington brought a § 1983 action on behalf of ten prison inmates who were beaten while shackled and handcuffed and nine inmates who were sent to a maximum security facility. 57 F.3d at 1103. Salazar concerned a class action which proceeded on three tracks simultaneously, requiring attorneys to monitor compliance with a remedial order, respond to an appeal and file a cross-appeal, and engage in extensive settlement negotiations which required the redrafting of remedial order. 123 F. Supp. 2d at 15-16. In short, plaintiff's attorneys have not successfully demonstrated "the complexity of the case they handled" as required under Covington. 57 F.3d at 1108. See also Salazar, 123 F. Supp. 2d at 12; Griffin v. Wash. Convention Ctr., 172 F. Supp. 2d 193, 202 (D.D.C. 2001) (reducing fees below those calculated using the Laffey rates in part because "once [the] appeal was completed, the resulting case was a simple Title VII action involving a handful of witness on each side and a short trial.").

Even though a trial took place, the Muldrow Court found that the case was not complex enough to award Matrix rates.  And courts in IDEIA cases have referred to the Matrix as a reference point at best. Blackman v. District of Columbia, 59 F. Supp. 2d 37, 43 (D.D.C. 1999).  To be emphasized is that an attorney's longevity at the bar alone is not conclusive. See, e.g., Griffen v. Washington Convention Center, 172 F.Supp.2d 193, 199 (D.D.C. 2001):

There is nothing automatic about the application of "Laffey" rates.  They are not like a GS schedule where government employees advance to the next step by virtue of time in grade.  Instead, they attempt to reflect what the market will pay with the understanding that the market will pay more for lawyers who are experienced in complicated federal litigation.

Plaintiffs have clearly failed to meet their burden that Matrix rates should apply.

As to the first element – the attorneys' billing practices—Plaintiffs' affidavits and

invoices are problematic.  As noted in Defendants' Opposition (p. 6), but unaddressed by

the Plaintiffs, the amounts billed to DCPS in the original invoices and attached to the

Complaint were a lot higher than the amounts in the sworn affidavits. Even after

Plaintiffs attached new invoices, they still show discrepancies.  For example, R.G. swears

in her affidavit that she bills $350.00 per hour "below the Laffey rate."  Exhibit 5,

Affidavit of R.G.  However, in her invoices she bills $360.00 per hour.  Exhibit 2.

Further, there is no description or other evidence setting forth counsel's normal billing

practices (including hourly rates charged) for clients who do posses the ability to pay, and

there is no indication what actual rate the attorneys here specified in their retainer

arrangements with the Plaintiffs.  To that extent, the Court has no basis for a

determination regarding whether Plaintiffs' counsel can command the type of rates set

forth in the Matrix.  The fee request therefore fails to satisfy this first Covington element.

> As to the second Covington element, the Plaintiffs
>
> must offer evidence to demonstrate their attorneys' experience, skill, reputation,
> and the complexity of the case they handled.  In articulating the plaintiffs' burden
> in these cases, the Supreme Court required that fee applicants "produce
> satisfactory evidence – in addition to the attorney's own affidavits – that the
> requested rates are in line with those prevailing in the community for similar
> services by lawyers of reasonably comparable skill, experience, and reputation."
> Blum, 465 U.S. at 896 n. 11. . . .

57 F.3d at 1108.

The Plaintiffs' summary assertions stand in stark contrast to the fee petition

approved in Covington itself.  There, the fee application included specific information

pertaining to all of the attorneys' experience, skill, and reputation.  The petition gave

detailed account of the extensive civil rights case experience of each of the attorneys.[5]  It

---

[5] The Court stated:

Gaffney's and Schember's declarations each recount their significant experience since 1975, at the

was this detailed evidentiary showing that enabled the trial court to find it reasonable to grant counsel an hourly rate at the highest level of the Matrix.  With respect to skill, experience and reputation, Defendants' Motion (pp. 5-6) states that Plaintiffs have failed to address these matters as required by Covington.  Plaintiffs' Opposition fails to address this at all.  But for attaching affidavits to their Motion for Summary Judgment that 1) do not state the community market rate for attorneys with comparable experience, 2) contain errors as to hourly rates billed, and 3) show the attorneys were actually charging DCPS higher rates than their normal billing hours, the Covington standard was not addressed.

As to the paralegals, law clerks and advocates, Plaintiffs do not provide any information about these employees at all.  See Coleman v. District of Columbia, Civ. No. 03-0126, p. 5 (D.D.C. May 3, 2007)(reducing the paralegals and law clerks hourly rates for these reasons.)

As to the prevailing market rate, the third Covington element is equally unsatisfied here.  Plaintiffs simply state "plaintiffs request here is more than reasonable." Opposition P. 5.

While the Laffey court held that an updated Matrix demonstrated the prevailing market rates in the relevant community for attorneys of reasonably comparable skill, experience, and reputation, 57 F.3d at 1109, the Court had sufficient evidence to establish that the counsel there involved indeed were of comparable skill, experience and reputation.  As discussed above, however, Plaintiffs have not provided the Court with

---

Lawyers Committee for Civil Rights Under Law, and since 1977, at their own firm, practicing federal court litigation on a variety of issues.  Their declarations also provide indications of their reputations, listing teaching positions and fellowships, awards received, participation in congressionally mandated studies, and chairing the D.C. Bar's Committee on Military and Veterans Rights.Covington,

57 F.3d at 1104 (footnotes excluded); see id., n. 3, 4, 5, 6, 7, 8.

sufficient evidence that their counsel possesses a level of experience and skill, or an

adequate reputation, to enable a conclusion that his qualifications are comparable to

attorneys that have traditionally been awarded <u>Matrix</u> rates.  For example, on page 4 of

their Opposition, Plaintiffs cite <u>Abraham v. District of Columbia</u>, 338 F. Supp. 2d 113

(D.D.C. 2004), to support their argument that <u>Laffey</u> rates should apply because the

Court applied <u>Laffey</u> rates in <u>Abraham,</u> an IDEIA case.  However, in <u>Abraham</u>,

Plaintiff's attorney was an attorney with particular skill, expertise and reputation and

demonstrated that to the Court as the Court noted:

> Mr. Drake has 40 years of experience as an attorney and more than 15
> years in the practice of special education law. He tells the Court that he
> has been very active, both in IDEA cases and before the D.C. Council, in
> advancing the interests of disabled children. He asserts that he has
> participated in hundreds of IDEA hearings and contributes to a website
> providing information on such issues. . . .

In sum, the Plaintiffs have now requested the Court to grant their counsel an

hourly rate based on the <u>Matrix</u> without documenting the reasonableness of granting such

a rate. Under such circumstances, even if the Court were to deem the <u>Matrix</u> applicable, it

should deny the request because Plaintiffs have simply not met their burden of proof.

**D.      Defendants' Have Provided Evidence To Rebut The Application Of The Hourly Rates Requested By Plaintiff.**

Plaintiffs' Opposition (p.5) (citing <u>Nat'l Assoc. of Concerned Veterans v. Sec'y</u>

<u>of Defense</u>, 675 F. 2d 1319, 1323 (D.C. 1982)) states that Defendants must provide facts

and affidavits to show why the applicant's request should be reduced or denied.

Defendants have shown that DCPS Guideline rates are the prevailing market rates

in the community for IDEIA cases. Defendants' Motion pp. 6-7. Plaintiffs' response is

that DCPS attorneys' fees rates proposed by the Defendants should not apply because

DCPS denied their fee applications.  Plaintiffs' Opposition P. 7.  This reasoning is simply incomprehensible.  DCPS having refused to pay fees has nothing whatsoever to do with the propriety of the hourly rates proposed here.

Defendants showed that other attorneys with similar skill, reputation and experience are not paid <u>Matrix</u> rates. Defendants' Motion pp. 6-7 and Declaration of Quinne Harris Lindsey.  Exhibit 1.  Plaintiffs did not respond.

Defendants provided examples of how this Circuit has applied agency fee guideline rates apply as to administrative hearings in other agencies in discrimination cases.  Defendants' Motion p. 8.  Plaintiffs did not respond.

Defendants provided examples of how other DC metropolitan area federal courts have not applied the <u>Matrix</u> in IDEIA cases but rates similar to DCPS Guideline rates. Defendants' Motion p. 8.  Plaintiffs did not respond.

## II.    <u>PLAINTIFFS' ARGUMENT THAT A RULING ON MR. HILL'S FEE AWARD SHOULD BE HELD IN ABEYANCE IS WITHOUT MERIT</u>

The Motion also included an argument that while two of the Brown Firm attorneys, Domiento Hill and Juan Fernandez, were representing clients under the IDEIA, they were not licensed in the District of Columbia.  Motion pp. 3-5. Thus, their fees should be eliminated because they were in violation of the D.C. Court of App. R. 49(a), being unauthorized to practice law during the times invoiced for Plaintiff K.B., L.F., D.K., J.P. and A.M. <u>Id</u>.  Defendants relied on a June 8, 2007, Memorandum Opinion in <u>Agapito v. District of Columbia</u>, Civ. No. 05-1935, pp. 11-14 (D.D.C., March 7, 2007) which found that Mr. Hill was not authorized to practice law during these same time periods and denied the IDEIA attorneys' fees requests on that basis.

Plaintiffs make no reference to Mr. Fernandez, and do not respond to—and thus concede—Defendants' arguments as to that attorney. "It is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff has failed to address as conceded." Buggs v. Powell, 293 F.Supp.2d 135, 141 (D.D.C. 2003), citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997). See also Twelve John Does v. District of Columbia, 117 F.3d 571, 577 (D.C. Cir. 1997) ("[w]here the district court relies on the absence of a response as a basis for treating the motion as conceded, [the District of Columbia Circuit] honor[s] its enforcement of that rule") (citation omitted).

As to Mr. Hill, Plaintiffs do not dispute that he was not authorized to practice law. They simply ask that any decisions as to Mr. Hill be held in abeyance because they plan to appeal the final decision in Agapito. Plaintiffs' Opposition pp. 8.

In their Opposition, Plaintiffs contend that "judicial economy" would require the Court to hold this issue in abeyance, because they intend to appeal the Agapito decision as to Mr. Hill. Plaintiffs do not offer any support or argument for this point. Moreover, if Plaintiffs do not appeal, the Defendants would have to reargue this point as to this single invoice. Since the arguments have already been made in Defendants' Motion, judicial economy would require that issue to be decided here. See State of New York v. Microsoft Corp., 2003 WL 299440*1 (D.D.C. 2003) (movant's motion to hold attorneys' fees decision in abeyance because the amount of which could be affected by the pending

appeal was denied because the federal rules encourage litigating fees with material facts

fresh in their minds rendering a more accurate and reliable record.)[6]

## III.    PLAINTIFFS FAILED TO SHOW THAT a) THEIR STATEMENT OF FACTS IS SUFFICIENT, b) CERTAIN INVOICE ENTRIES WERE NOT ERRONEOUS, VAGUE, OR TOO REMOTE IN TIME, AND c) THAT PLAINTIFFS ENJOYED MORE THAN A LIMITED SUCCESS ON THE MERITS OF THEIR CLAIMS.

### A.    Plaintiffs Do Not Make the Necessary Showing That Their Statement Of Facts Is Sufficient.

Defendants argued that Plaintiffs' statement of material facts was totally

insufficient by omitting many of the facts that are at issue here, such as prevailing market

rate, skill, experience and reputation of the attorneys seeking fees, and the applicability of

the Laffey Matrix rates, the exact rates that Plaintiffs are seeking here.  Defendants'

Opposition pp. 2-4.  Plaintiffs' responded that such material facts as prevailing party

were stated.  Plaintiffs' Opposition p. 4. Plaintiffs also assert that the applicability of

Laffey was alleged.  Id.

Plaintiffs' argument that Laffey rates are alleged because they pointed to the

invoices and claimed the amounts were reasonable does not rebut Defendants' position

that Plaintiffs' Statement of Material Facts failed to allege the proper prevailing market

rate or the applicability of Laffey.  Plaintiffs further argue that Laffey was argued in the

Motion itself.  Plaintiffs' Opposition p. 4.  Plaintiffs' Motion for Summary Judgment

only mentions Laffey one time (p. 4) "The Court should apply the Laffey Matrix the [sic]

ten attorney fee cases in which the Court found that the parent prevailed."  Neither the

---

[6]Plaintiffs have asserted that "defendants' argument that Mr. Hill's bar status is untimely was not mentioned in Defendants' motion to dismiss" (p. 9) is without consequence.  Agapito had not been decided at the time of Defendants' filing their earlier dismissal motion.  Moreover, failure to have included any such argument in a dismissal motion stands as neither a waiver of, nor a bar to, presenting such an argument in support of summary judgment.

<u>Laffey Matrix</u> itself, nor citation to the <u>Laffey</u> case was provided in Plaintiffs' Statement

of Facts not in dispute or in any portion of the Motion.  It was first argued in Plaintiffs'

Opposition.

> [Rule 56] requires that the party opposing a motion for summary judgment "may
> not rest on the mere allegations or denials of his pleading," but must "set forth
> specific facts showing that there is a genuine issue for trial." Local Rule 1-9(i) of
> the [D.D.C.] imposes an explicit requirement that parties opposing summary
> judgment file "a concise 'statement of genuine issues' setting forth all material
> facts as to which it is contended there exists a genuine issue necessary to be
> litigated.

<u>NRM Corp. v. Hercules</u>, 758 F. 2d 676, 680 (U.S. Ct. App. D.C. 1985), <u>citing</u> <u>Tarpley v.

Greene</u>, 684 F.2d 1, 7 (D.C.Cir.1982); <u>Gardels v. CIA</u>, 637 F.2d 770, 773

(D.C.Cir.1980). Moreover, Plaintiffs seem to ignore Defendants' citation to <u>McKinney v.

Dole</u>, 765 F.2d 1129, 1135 (U.S. App. D.C. 1985) and <u>Fed. R. Civ. P.</u> 56 (Defendants'

Opposition p. 2), which set forth this Circuit's high standards regarding Motions for

Summary Judgment and Statements of Material Fact:

> The burden on a party moving for summary judgment is affirmative: The
> party seeking summary judgment has the burden of showing there is no
> genuine issue of material fact, even on issues where the other party would
> have the burden of proof at trial, and even if the opponent presents no
> conflicting evidentiary matter. . . .

> In assessing whether a party moving for summary judgment has met his or
> her burden, a court must view all inferences to be drawn from underlying
> facts in the light most favorable to the party opposing the motion.

<u>McKinney v. Dole</u>, at1135, <u>citing</u> <u>Weisberg v. U.S. Dep't of Justice</u>, 627 F.2d 365, 368

(D.C.Cir.1980). <u>See also</u> <u>United States</u> <u>v. Diebold, Inc</u>., 369 U.S. 654, (1962) (per

curiam).

> [T]the record must show the movant's right to [summary judgment] with
> such clarity as to leave no room for controversy, and must demonstrate
> that his opponent would not be entitled to [prevail] under any discernible
> circumstances.

<u>Williams v. WMATA</u>, 721 F.2d 1412, 1415 (D.C.Cir.1983) (<u>quoting</u> <u>Nat'l Ass'n of Gov't</u>
<u>Employees v. Campbell</u>, 593 F.2d 1023, 1027 (D.C.Cir.1978).

Even Plaintiffs' Statement of Material Facts in Dispute (attached to their reply
and not their Opposition filing) is insufficient.  In paragraph five, Plaintiffs fail to cite to
the record at all, and in paragraphs two, three, and six, Plaintiffs only cite to the exhibits
generally.  Finally, in paragraph 6, Plaintiffs respond to 70 paragraphs of Defendants'
Statement of Material Facts Not In Dispute with only one blanket statement.

 <u>Fed.</u> <u>R.</u> <u>Civ.</u> <u>P.</u> 56 requires that an opposition to a motion for summary judgment
"be accompanied by a separate concise statement of genuine issues setting forth ***all***
***material facts*** as to which it is contended there exists a genuine issue necessary to be
litigated, which shall include references to the parts of the record relied on to support the
statement." (emphasis added).  This requirement is essential because it "isolates the facts
that the parties assert are material, distinguishes disputed from undisputed facts, and
identifies the pertinent parts of the record."  <u>Burke v. Gould,</u> 286 F.3d 513, 517 (D.C. Cir.
2002), <u>citing</u> <u>Gardels v. Cent. Intelligence Agency</u>, 637 F.2d 770, 773 (D.C. Cir. 1980).
<u>See</u> <u>also</u> <u>McKinney v. Dole</u>, 765 F.2d 1129, 1135 fn12 (U.S. App. D.C. 1985).
Therefore, since Plaintiffs failed to address Defendants' argument that their statement of
facts is insufficient, and since their Statement of Facts In Dispute was also insufficient,
Defendants' Motion should be granted because the Plaintiffs did not present sufficient
material facts to support their arguments.

**B.    Plaintiffs Failed To Address Any Disputed Invoice Entries Individually.**

Defendants' Motion further challenged several invoiced entries as either, vague, erroneous, or too remote in time.  Motion pp. 17-22.  Plaintiffs are seeking over $78,000.00 dollars in fees in this case, reflected by over 50 pages of invoices.  Exhibit 2. However, in Opposition, Plaintiffs failed to point to or explain even one line entry challenged by the Defendant to justify the fees they are seeking here.  Plaintiffs simply make a blanket statement that "any and all time expended on behalf of the Plaintiffs were expended in a reasonable manner with the intent of providing quality representation."[7] Plaintiffs' Opposition p. 8.

Moreover, rather than respond to Defendants' disputed entries, Plaintiffs seem to suggest that this Court should simply make its own conclusion.  "The invoices that were submitted are sufficiently detailed to allow this Honorable Court to make an independent determination as to the reasonableness of the hours claimed." (quoting National Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319. (D.C. Cir 1982).  While this Court has the authority to make an independent determination, Defendants have provided examples and authority in support of its requested deductions.  Defendants' Motion pp. 17-21.

**C.    Plaintiffs Concede That They Only Enjoyed A Limited Success On The Merits of Their Claims.**

Defendants' Motion (p. 21) argued that, after the reductions made in Attachment A based on the arguments above, the claims should be further reduced by either 25% or 50% because Plaintiffs only enjoyed 50-75% success as to those claims.   Plaintiffs have

---

[7] Plaintiffs also concede the billing for AM is wrong and the bill review entries are wrong. (p.8)

not addressed this argument whatsoever.  Thus, in light of Plaintiffs' failure to respond,

Defendants' arguments should be deemed conceded.

### CONCLUSION

In light of 1) Plaintiffs' failure to respond to Defendants' arguments, 2) the

introduction of new invoices, erroneous invoices, and insufficient statement of facts, and

3) unsupported arguments, Defendants' motion for summary judgment should be granted

awarding only awarding the amounts in attachment A and then further reductions for the

amount Plaintiff actually prevailed. See Attachment B.

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [#012914]
Chief, Equity Section 2

/s/ Amy Caspari
Amy Caspari [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7794

August 24, 2007                    amy.caspari@dc.gov