**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| GLORIA SANTAMARIA *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 06-577 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 18, 22 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART THE PARTIES' CROSS-MOTIONS FOR
SUMMARY JUDGMENT

**I.  INTRODUCTION**

This matter comes before the court on the parties' cross-motions for summary judgment. The plaintiffs are the parents and next friends of several children who are protected by the Individuals with Disabilities Education Act ("IDEA"),[1] 20 U.S.C. §§ 1400 *et seq.* The plaintiffs initiated this action to request an award of attorneys' fees and costs incurred while prosecuting various administrative claims under the IDEA. The defendant, the District of Columbia, disputes the reasonableness of the plaintiffs' request. The court concludes that part, but not all, of the plaintiffs' request is reasonable. Accordingly, the court grants in part and denies in part the parties' respective motions.

---

[1]  In December 2004, the IDEA was amended by the Individuals with Disabilities Education Improvement Act. The IDEIA became effective July 1, 2005. *See* Pub. L. 108–446, 118 Stat. 2647 (2004). The differences between the old and the new statutes are not relevant for the purpose of this memorandum opinion, and the court will continue to refer to the amended statute as the IDEA. *See Gill v. District of Columbia*, 770 F.Supp.2d 112, 117 n.3 (D.D.C. 2011).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs are parents and next friends of a number of children enrolled in various schools within the District of Columbia Public Schools system ("DCPS"). Compl. ¶ 4. The plaintiffs initiated administrative hearings to determine whether the defendant failed to provide these children with a Free and Appropriate Public Education ("FAPE"), as the IDEA requires. *Id.* Following the hearings, several children were awarded relief under the IDEA. Mem. Op. (Feb. 6, 2007) at 1–2. The plaintiffs requested reimbursement of attorneys' fees in twenty-two claims, which the defendant did not pay.[2] Pls.' Mot. at 1. The plaintiffs then filed this action to recover reasonable attorneys' fees and costs. *See generally* Compl. Initially, the parties disputed whether certain plaintiffs were "prevailing parties" under the IDEA, a question the court resolved in 2007 by concluding that most of those plaintiffs had prevailed. *See* Mem. Op. (Feb. 6, 2007) [Dkt. # 11]. The parties subsequently filed cross-motions for summary judgment regarding the reasonableness of the plaintiffs' fee request. Pls.' Mot. for Summ. J. ("Pls.' Mot.") [Dkt. # 18]; Def.'s Mot. for Summ. J. ("Def.'s Mot.") [Dkt. # 22]. With these motions ripe for consideration, the court now turns to the parties' arguments and to the applicable legal standards.

## III.  ANALYSIS

### A.  Legal Standard for Attorneys' Fees Under the IDEA

A district court is authorized to award "reasonable attorneys' fees" to a prevailing party under the IDEA. 20 U.S.C. § 1415(i)(3)(B). The court's award of fees is based on a two-step inquiry: the court must first determine if the party is the "prevailing" party, and second, the court

---

[2] Neither party puts forward the reason why the plaintiffs' request was denied, although the plaintiffs suggest that DCPS merely failed to respond, which is construed as a denial. *See Wilson v. District of Columbia*, 269 F.R.D. 8, 11 (D.D.C. 2010).

must determine whether the requested fees are reasonable.[3] *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Jackson*, 696 F. Supp. 2d at 101 (applying *Hensley* in the IDEA context).

The plaintiff bears the burden of demonstrating that both the hourly rate and the number of hours spent on any particular task are reasonable. *In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995). A plaintiff can do so by submitting evidence on at least three fronts: "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). Once the plaintiff has provided such information, a presumption arises that the number of hours billed is reasonable and the burden shifts to the defendant to rebut the plaintiff's showing. *Id.* at 1109–10.

### B. The Court Grants in Part and Denies in Part the Parties' Cross-Motions for Summary Judgment

#### 1. The Number of Hours Billed by the Plaintiffs' Counsel

##### a. Some of the Plaintiffs' Requested Fees and Costs Are Excessive

The defendant argues that the plaintiff's requested fee award should be reduced because the plaintiffs include "bill review" as a cost. Def.'s Mot. at 21. The plaintiffs concede that they

---

[3] Here, the court concluded in a previous memorandum opinion that several plaintiffs were prevailing parties. *See generally* Mem. Op. (Feb. 6, 2007). Regarding the remaining plaintiffs (Lunette Russell on behalf of K.B. and Jeaunel Partridge on behalf of J.P.), the defendant has conceded that they were prevailing parties by failing to contest the plaintiffs' argument in their filings. *See Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded."). The court will therefore focus on the second step of the inquiry.

may not receive any fees for these charges. Pls.' Reply at 8 [Dkt. # 24]. Accordingly, the court will not award the plaintiffs any fees or costs associated with invoices that charge for "bill review."

In addition, the defendant identifies several charges that they believe are excessive and should not be included in the court's award. *See* Def.'s Mot. at 20–21. The defendant points to a handful of charges that were incurred by an education advocate—not an attorney or a paralegal. *Id.* The plaintiffs concede that education advocates may not recover fees or costs under the IDEA, Pls.' Reply at 8, and the defendant's objection is therefore moot. The court will therefore disallow any portion of the request that is attributed to education advocates.

### b. The Court Will Reduce the Plaintiffs' Award by 5% For Their Limited Success

The defendant argues that the plaintiffs' award should be reduced because the plaintiffs only received a limited degree of success in their claims. Def.'s Mot. at 21. The entirety of the defendant's argument is as follows:

> As to the claims of S.M., M.J., and D.K., their exhibits demonstrate overall that they only enjoyed approximately 75% success on their claims. As to the claims of J.P., A.P., R.W., S.Y., P.B. and L.F., their exhibits only demonstrate that they enjoyed approximately 50% success in their claims. These claims should be reduced accordingly.

*Id.* The plaintiffs do not address this argument in their opposition.

A court has the discretion to reduce an award of attorneys' fees to account for a party's limited success. *Hensley*, 461 U.S. at 437; *B.R. ex rel. Rempson v. District of Columbia*, 802 F. Supp. 2d 153, 164–65 (D.D.C. 2011); *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 22–23 (D.D.C. 2005). When awarding fees for a partially successful plaintiff, it is crucial to first determine whether the claims on which the plaintiff prevailed are related to those claims on which the plaintiff did not succeed. *See Hensley*, 461 U.S. at 434–35. If the claims "involve a

4

common core of facts" or are based on "related legal theories," "[m]uch of counsel's time will likely be devoted to the litigation as a whole, making it difficult to divide the hours on a claim-by-claim basis." *Id.* at 435. Accordingly, the court should "focus on the significance of the overall relief obtained by plaintiff in relation to the hours that counsel reasonably expended on the litigation." *Id.*; *see id.* at 436–37 ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

Here, several plaintiffs received a large proportion of the relief they had originally sought. For example, although an administrative officer concluded that S.M. was not denied a FAPE, S.M. was successful in his request to obtain home-schooling. Compl., Ex. 13 at 6. Similarly, a hearing officer concluded that M.J. was not necessarily denied a FAPE but nevertheless concluded that M.J. might have been denied certain special education services and required that DCPS investigate the matter and provide compensatory education if necessary. *Id.*, Ex. 9 at 11–12. D.K. received an order requiring DCPS to conduct a neuropsychological evaluation and convene a multidisciplinary team ("MDT") to review and revise D.K.'s individualized education program ("IEP"). *Id.*, Ex. 11 at 2–3.

Regarding the District's conclusion that several other plaintiffs received only 50% of the relief they sought, the court concludes that their level of success does not warrant a drastic reduction of the award of attorneys' fees. For example, a hearing officer found that J.P. was not denied a FAPE, but the officer did find that DCPS failed to conduct an evaluation, despite recommendations by a DCPS psychiatrist. DCPS was ordered to conduct a vocational assessment and to convene an MDT/IEP meeting to make any appropriate adjustments in the child's IEP. Compl., Ex. 15 at 6. The same is true of plaintiff A.P., *id.*, Ex. 16 at 4 (finding no

denial of a FAPE but ordering DCPS to convene a MDT/IEP placement meeting), plaintiff R.W., *id.*, Ex. 20 at 4 (finding no denial of a FAPE but ordering a psychiatric assessment and requiring the DCPS to convene an MDT/IEP meeting), plaintiff S.Y., *id.*, Ex. 22 at 3 (no denial of FAPE but DCPS was ordered to conduct psycho-educational, speech/language, social history and clinical psychological evaluations and to convene an MDT/IEP meeting), P.B., *id.*, Ex. 4 (no denial of a FAPE but MDT/IEP meeting ordered, and DCPS ordered to develop a compensatory education plan and provide said education) and plaintiff L.F., *id.*, Ex. 6 (no denial of a FAPE but MDT/IEP meeting ordered).

The defendant does not argue that the plaintiffs brought any meritless claims that were unrelated to their successful claims. *E.g.*, *B.R. ex rel. Rempson*, 802 F. Supp. 2d at 165 (reducing the plaintiffs' fee award because they brought a meritless claim that was separate from their successful claim). But the court recognizes that these plaintiffs received less than all of the relief they sought. *See Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 121–23 (D.D.C. 2010) (reducing the plaintiffs' fee award because the plaintiffs received some but not all of their requested relief). In light of the plaintiffs' overall degree of success and the interrelated nature of the plaintiffs' claims, the court will reduce the plaintiffs' award of attorneys' fees for the claims of J.P., A.P., R.W., S.Y., P.B. and L.F. by five percent.

### c. The Plaintiffs Did Not Incur Charges that are Too Remote in Time

The defendant points out that the plaintiffs incurred several charges in anticipation of a hearing that was yet to occur for several months. Def.'s Mot. at 18. The defendant therefore concludes that these preparatory efforts were too remote in time and should be excluded from the fee award. *Id.* at 19. The plaintiffs counter that their efforts were expended only a few months before the relevant hearing and should be included in the ultimate fee award. Pls.' Opp'n at 8.

A court may reduce an award of attorneys' fees if the plaintiffs incurred charges that predate the administrative hearing by such an extended period of time that they lack "a meaningful relationship with that hearing." *Czarniewy v. District of Columbia*, 2005 WL 692081, at *4 (D.D.C. Mar. 25, 2005). In *Lax v. District of Columbia*, the court found that plaintiffs who incurred charges a year in advance of a hearing operated within "an entirely reasonable window of time to be engaging in productive work that will result in a favorable administrative decision." 2006 WL 1980264, at *4 (D.D.C. July 12, 2006).

The defendant challenges a number of invoices for preparatory work that was performed between four and six months before the plaintiffs' administrative hearings. *See* Def.'s Mot. at 18.[4] The mere passage of a few months' time does not rebut the plaintiffs' claim that these hours were reasonably expended in furtherance of the plaintiffs' administrative claims in this matter. The court concurs with the court's reasoning in *Lax* and concludes that these charges are not too remote in time to be included in the fee award. The court will therefore allow the plaintiffs to recover these fees.

### d. The Defendant Has Not Shown that the Plaintiffs' Invoices Lack Specificity

The defendant argues that the court should reduce the plaintiffs' award because several of their invoices are insufficiently detailed. Def.'s Mot. at 17. For example, the defendant argues that the plaintiffs seek fees for such vague services as "preparation for hearing," "preparation for school visit," and "preparation for telephone conference." *Id.* The plaintiffs do not contest the defendant's argument but instead request that the court apply its independent analysis to judge the overall reasonableness of the award. Pls.' Reply at 5.

---

[4] The defendant also challenges several charges that are associated with plaintiff A.M. *See* Def.'s Mot. at 19. Because the plaintiffs did not move for summary judgment on A.M.'s claim, the defendant's argument is moot.

A fee request "need not present the exact number of minutes spent nor the precise activity to which each hour was devoted," but the application must still be sufficiently detailed to allow the court to determine whether the hours claimed are reasonable. *See Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). Where adequate time records are not kept, the court may reduce the overall award of attorneys' fees. *Hensley*, 461 U.S. at 433.

Here, the plaintiffs filed a detailed list of invoices that identify the charges for which they seek reimbursement, thus establishing a *prima facie* case that their requested award is reasonable. *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004). The defendant now bears the burden of convincing the court that the requested fees should not be granted. *Covington*, 57 F.3d at 1109–10. The defendant does not identify which fees are insufficiently detailed, however. Instead, the defendant summarily concludes that $4,392 of the plaintiffs' invoices are impermissibly vague. Def.'s Mot. at 18. The only corroboration the defendant provides is included in a spreadsheet which provides no further detail and contradicts the figures included in its motion for summary judgment. *See id.*, Attach. A. Although the defendant has the right to challenge any part of the plaintiffs' claims, they "must provide 'specific and contrary evidence' to rebut the presumption of reasonableness . . . ." *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 26 (D.D.C. 2004) (quoting *Covington*, 57 F.3d at 1110–11 (D.C. Cir. 1995). Because the defendant has failed to do so, the court will not reduce the plaintiffs' award based on a lack of specificity.

### 2. The Plaintiffs' Requested Hourly Billing Rates

#### a. Domiento Hill Was Not Licensed to Practice Law in D.C.

The defendant argues that Mr. Hill, a member of the James E. Brown & Associates law firm, provided legal services for several plaintiffs while he was not authorized to practice law in

the District of Columbia. Def.'s Mot. at 3. The defendant therefore concludes that the court should not award the plaintiffs any fees incurred by Mr. Hill. *Id.* The plaintiffs do not contest that Mr. Hill incurred a number of charges before he was admitted to the D.C. Bar. *See* Pls.' Mot. at 9.

In the District of Columbia, engaging in the unauthorized practice of law constitutes misconduct and is grounds for disbarment. *Agapito v. District of Columbia*, 477 F. Supp. 2d 103, 112 (2007). Courts have taken different approaches when determining an award of attorneys' fees incurred by lawyers who are not licensed to practice in the District of Columbia: some courts award fees to unlicensed attorneys at a rate that is normally earned by paralegals, *Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113 (D.D.C. 2010), whereas other courts deny fees altogether, *Agapito*, 477 F. Supp. 2d at 115–16. The court will adopt the court's reasoning in *Agapito*, as the court sees little reason to provide any financial incentive to those who engaged in the unlicensed practice of law.[5] *Id.*

### b. The Court Will Not Award *Laffey* Rates Because the Plaintiffs Have Not Established that Their Case Was Particularly Complex

The plaintiffs urge the court to adopt the *Laffey* Matrix[6] when calculating the proper attorney hourly rate. *See* Pls.' Mot. at 4. The defendant counters that IDEA proceedings are "not the type of complex federal litigation for which *Laffey* rates were adopted." Def.'s Opp'n at 8–9. Instead, the defendant insists that the court apply a set of hourly rates suggested by DCPS. *Id.* at 10; *Id.*, Ex. B at 3.

---

[5] The defendant also argues that attorney Juan Fernandez was not licensed to practice law while representing plaintiff A.M. Def.'s Mot. at 3–4. Because the plaintiffs did not move for summary judgment for fees incurred on A.M.'s claim, the court concludes that the defendant's argument is moot.

[6] The *Laffey* Matrix is a chart of hourly rates that is based upon attorneys' respective years of experience. *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 24 (D.D.C. 2005).

Courts in this circuit disagree as to whether reasonable hourly rates for IDEA cases should track the *Laffey* matrix or the DCPS guidelines. *Compare Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 102 (D.D.C. 2010) (collecting cases that apply the *Laffey* matrix) *with Agapito*, 525 F. Supp. 2d at 150 (applying DCPS guidelines due to the straightforward nature of an IDEA due process hearing). In any event, neither matrix is binding upon this court. Rather, both matrices are merely tools to help gauge the overall reasonableness of the fees sought, a determination that ultimately turns on the facts of each particular case. *Flores v. United States*, 2012 WL 1434964, at *5 (D.D.C. Apr. 26, 2012) ("Federal courts do not automatically have to award *Laffey* rates but instead they can look at the complexity of the case and use their discretion to determine whether such rates are warranted.").

A fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107 (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). The plaintiffs have submitted affidavits that describe their attorneys' experience and billing practices. *See, e.g.*, Pls.' Mot., Ex. A (Affidavit of Roberta Gambale) (indicating that the attorney has practiced since 2001 and that her hourly rate is $350.00). But these affidavits do not contain sufficient information regarding the attorneys' skill or reputation; instead, they simply note the number of years that the attorney has practiced. *See id.* In addition, the affidavits do not indicate whether any clients are actually charged—and in fact pay—the hourly rate at which the plaintiffs seek reimbursement from the District. Moreover, the affidavits do not suggest how the attorneys' billing rates compare to the prevailing market rates in the community. The plaintiffs bear the burden of establishing that

*Laffey* coincides with the market rate for these types of services, *Covington*, 57 F.3d at 1107, and by failing to link *Laffey* to the prevailing market rate they have failed to satisfy this burden.

In addition, the plaintiffs have not put forward any evidence to suggest that their claim was particularly complex, thus entitling them to *Laffey* rates. *See Crawford v. District of Columbia*, 2012 WL 1438985, at *3 (D.D.C. Apr. 26, 2012) ("[T]his case involves the IDEA, which is *not* complex federal litigation because most if not all of the attorney's fees in question are the result of counsel's preparation for attendance at routine administrative hearings."); *cf. Covington v. District of Columbia*, 57 F.3d 1101, 1106 (D.C. Cir. 1995) (noting that "[p]laintiffs' counsel handled very well this complicated federal case, which involved the constitutional claims of ten plaintiffs against sixteen defendants, lengthy discovery, many motions and a jury trial"). The plaintiffs have not put forth any evidence to suggest that their claim involved any complexity beyond that presented by a routine IDEA matter. An independent review of the record indicates that the plaintiffs' claim revolved around a number of routine administrative hearings, many of which involved similar claims and identical requests for relief. No evidence suggests that the plaintiffs' claim involved complex legal questions or thorny procedural matters. Absent contrary evidence, the court will apply the DCPS guidelines, which the defendant concedes is reasonable. Def.'s Opp'n, Ex. B.[7]

### 3. The Plaintiffs' Fee Award is Subject to a Fee Cap

The District of Columbia correctly notes that its ability to pay any award is capped by law. Def.'s Mot. at 22; *see* District of Columbia Appropriations Act, 2005, 108 Pub. L. No. 108-335, 118 Stat. 1322. Although defendant's ability to pay the award is capped, the court may

---

[7] But the court does not hold that the DCPS guidelines reflect market rates for all IDEA cases. The court's adoption of these rates is based simply on the plaintiffs' failure to support the application of an alternative rate and the defendant's concession that applying the DCPS guidelines is reasonable.

nonetheless issue an opinion detailing the award in full. *Calloway v. District of Columbia*, 216 F.3d 1, 3 (D.C. Cir. 2000) (recognizing the "potential incongruity of courts' awarding fees that [federal law] prohibits the District from paying," but concluding that "reconciling inharmonious statutory directives is Congress' responsibility, not the courts'").

### 4. The Court Will Award the Plaintiffs Pre-judgment Interest

The court will allow the plaintiffs to recover both pre-judgment interest and post-judgment interest on their award of attorneys' fees. Pre-judgment interest is designed to compensate the plaintiff for any delay in payment that is caused by the litigation. *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 28 (D.D.C. 2004) (citing *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C.Cir.1997)); *see Motion Pictures Ass'n of Am., Inc. v. Oman*, 969 F.2d 1154, 1157 (D.C. Cir. 1992) ("interest compensates for the time value of money and thus is often necessary for full compensation"). Courts have the discretion to award pre-judgment interest when equitable considerations warrant doing so. *Motion Picture Ass'n of Am.*, 969 F.2d at 1157 (explaining that an award of prejudgment interest "is subject to the discretion of the court and equitable considerations"); *Holbrook*, 305 F. Supp. 2d at 46–47 (awarding pre-judgment interest in IDEA litigation). One of the main factors to be considered is the length of time that the plaintiffs were required to expend in litigation. *Compare Kaseman*, 329 F. Supp. 2d at 28 (D.D.C. 2004) (finding prejudgment interest appropriate where plaintiff's counsel waited two and a half years to obtain payment) *with McClam v. District of Columbia*, 808 F. Supp. 2d 184, 187–92 (D.D.C. 2011) (declining an award of prejudgment interest where the District had already "paid the lion's share of the attorney's fees" within a year). Here, the plaintiff's claim for attorneys' fees has been tied up in litigation for more than six years, and the court concludes that this factor alone warrants an award of pre-judgment interest. The rate of interest is set by the prime rate—"the rate that banks charge for short-term unsecured loans to credit-worthy

customers"—which the Circuit has held to be appropriate. *Oldham*, 127 F.3d at 54; *Forman v. Korean Air Lines Co., Ltd.*, 84 F.3d 446, 450 (D.C. Cir 1996) ("We quite agree with many of our sister circuits that the use of the prime rate for determining prejudgment interest is well within the district court's discretion"); *Holbrook*, 305 F. Supp. 2d at 46 (applying the prime rate to the IDEA attorney fee context).

### 4. The Court Will Require Additional Briefing

In light of the conclusions reached in today's memorandum opinion, the court will require additional briefing to allow the court to determine the precise sum to be awarded. Specifically, the plaintiffs must provide a table for each plaintiff; each table must clearly show the total amount of fees sought by listing (1) which attorneys and paralegals worked on the plaintiff's claim; (2) the attorney or paralegal's hourly rate (as is suggested by the DCPS guidelines); (3) the number of hours that the attorney or paralegal expended in pursuit of the claim; and (4) any applicable reduction. In addition, the parties shall submit briefing as to the appropriate pre-judgment interest rate.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the parties' cross-motions for summary judgment. An order consistent with this memorandum opinion is separately and contemporaneously issued this 12th day of July, 2012.

RUDOLPH CONTRERAS  
United States District Judge